UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN ("JACK") YANG,

                Plaintiff,

-against-

THE BANK OF NEW YORK MELLON
CORPORATION, ALCENTRA NY, LLC,
and ALCENTRA LIMITED,

                Defendants.

---

Civil Action No. 1:20-cv-03719

ECF Case

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Manisha M. Sheth*
Peter E. Calamari
Manisha M. Sheth
Kimberly E. Carson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100
petercalamari@quinnemanuel.com
manishasheth@quinnemanuel.com
kimberlycarson@quinnemanuel.com
*Attorneys for Plaintiff John ("Jack") Yang*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ALLEGATIONS OF THE COMPLAINT........................................................................................2

      A.     Alcentra NY Represented That It Would Act As Sub-Adviser for the Fund. ..................................................................................................................2

      B.     Mr. Yang Was A Consistently High Performing Employee Until He Reported His Concerns About Alcentra NY............................................................3

      C.     Alcentra NY Planned To Immediately Cease Serving As Sub-Adviser To The Fund. ........................................................................................................4

      D.     Plaintiff Reported The Directive To BNY Mellon. ..................................................5

      E.     Alcentra NY Did Not Implement The Investment Strategy In The Prospectus. ........................................................................................................7

      F.     After Mr. Yang's Reports, Defendants Retaliated Against Him. ...........................7

LEGAL STANDARD ...............................................................................................................9

ARGUMENT .........................................................................................................................9

I.     PLAINTIFF HAS STATED A CLAIM FOR WHISTLEBLOWER RETALIATION UNDER SECTION 806 OF SARBANES-OXLEY. .............................9

      A.     Plaintiff Engaged In Protected Activity By Reporting Concerns About Alcentra NY's Potential Violations of Securities Law. ........................................10

            1.     Plaintiff Provided Defendants With Notice Of Unlawful Conduct. ..........10

            2.     Plaintiff Reported His Beliefs To BNY Mellon. ......................................14

            3.     Plaintiff's Belief Of A Violation Was Subjectively and Objectively Reasonable. ..............................................................................15

II.    DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING. ...........................18

      A.     Plaintiff Has Pled Viable Contract Claims, Which Should Not Be Dismissed. .......................................................................................................18

            1.     Plaintiff's Compliance With Defendants' Code of Conduct Creates An Exception to At-Will Employment. ....................................................18

2.      The Offer Letter Was A Contract And Plaintiff's Allegations Demonstrate A Breach Of That Contract...................................................20

3.      Plaintiff Has Stated A Breach of Contract Claim Based On Defendants' Failure To Provide Compensation Under The LTIP and Cash Plan...........................................................................................21

B.      Defendants Breached The Implied Covenant Of Good Faith and Fair Dealing...............................................................................................24

C.      Mr. Yang States Claims For Unjust Enrichment And Quantum Meruit................24

CONCLUSION................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Ahmed Elkoulily, M.D., P.C. v. New York State Catholic Healthplan, Inc.*,
    153 A.D.3d 768 (2d Dep't 2017) ................................................................... 24

*Aledia v. HSH Nordbank AG*
    2009 WL 855951 at *3 (S.D.N.Y. Mar. 25, 2009) ........................................ 25

*Arakelian v. Omnicare, Inc.*,
    735 F. Supp. 2d 22 (S.D.N.Y. 2010) ............................................................. 20

*Ashmore v. CGI Group, Inc.*,
    2012 WL 2148899, (S.D.N.Y. June 12, 2012) .............................................. 24

*Barker v. UBS AG*,
    888 F. Supp. 2d 291 (D. Conn. 2012) ........................................................... 14

*Baron v. Port Authority of New York and New Jersey*,
    271 F.3d 81 (2d Cir. 2001) ............................................................................ 20

*Berman v. Neo@Ogilvy LLC*,
    2016 WL 7975001 (S.D.N.Y. Oct. 24, 2016) ............................................... 10

*Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*,
    620 F.3d 146 (2d Cir. 2010) ............................................................................ 9

*Criado v. ITT Corp.*,
    1993 WL 322837 (S.D.N.Y. Aug. 16, 1993) ................................................ 18

*Cucchi v. New York City Off-Track Betting Corp.*,
    818 F. Supp. 647 (S.D.N.Y. 1993) ............................................................... 19

*Diaz v. Transatlantic Reinsurance Co.*,
    2016 WL 3568071 (S.D.N.Y. June 22, 2016) ......................................... 14, 20

*Fraser v. Fiduciary Tr. Co. Int'l*,
    417 F. Supp. 2d 310 (S.D.N.Y. 2006) ..................................................... 14, 24

*Geldzahler v. New York Medical Coll.*,
    663 F. Supp. 2d 379 (S.D.N.Y. 2009) ........................................................... 20

*Gladitsch v. Neo@ogilvy, Ogilvy, Mather, WPP Group USA, Inc.*,
    2012 U.S. Dist. LEXIS 41904 (S.D.N.Y. Mar. 21, 2012) ............................ 16

*Goldman v. Simon Prop. Grp., Inc.*,
    869 N.Y.S.2d 125 (2d Dep't 2008) ............................................................... 25

*Goldstein v. SEC,*
    451 F.3d 873 (D.C. Cir. 2006) ........................................................................ 12

*Guyden v. Aetna, Inc.,*
    544 F.3d 376 (2d. Cir. 2008) .......................................................................... 16

*In re Anita Johnson v. Wellpoint, Inc.,*
    2011 WL 764714 (U.S. Dept. of Labor Feb. 25, 2011) .................................. 13

*In re Bentzion S. Turin v. Amtrust Financial Services, Inc. et al.,*
    35 IER Cases 458, 2013 WL 1497073 (Mar. 29, 2013) .................................. 12

*In re John Hughart v. Raymond James & Associates, Inc.,*
    2004 WL 5308719 (U.S. Dept. of Labor Dec. 17, 2004) ................................ 12

*Int'l Controls Corp. v. Vesco,*
    556 F.2d 665 (2d Cir. 1977) ............................................................................ 10

*Jones v. Mercedes Benz Manhattan, Inc.,*
    2020 WL 1445728 (S.D.N.Y. March 25, 2020) .............................................. 20

*Karmilowicz v. Hartford Fins. Servs. Group,*
    2011 WL 2936013 (S.D.N.Y. July 4, 2011) .................................................... 23

*Kavitz v. IBM Corp.,*
    458 F. App'x 18, (2d Cir. 2012) ..................................................................... 23

*Knudsen v. Quebecor Printing (U.S.A.) Inc.,*
    792 F. Supp. 234 (S.D.N.Y. 1992) ............................................................ 24, 25

*Leibowitz v. Bank Leumi Trust Co. of N.Y.,*
    548 N.Y.S. 2d 513 (2d Dep't 1989) ................................................................. 20

*Leshinsky v. Telvent GIT, S.A.,*
    942 F. Supp. 2d 432 (S.D.N.Y. 2013) ............................................................. 15

*Levitt v. Bear Sterns & Co., Inc.,*
    340 F.3d 94 (2d Cir. 2003) ................................................................................ 9

*Lucente v. Int'l Bus. Machines Corp.,*
    262 F. Supp. 2d 109 (S.D.N.Y. 2003) ............................................................. 22

*Mahony v. KeySpan Corp.,*
    2007 WL 805813 (E.D.N.Y. Mar. 12, 2007) .................................................. 10

*Morefield v. Exelon Servs., Inc.,*
    2004 WL 5030303 (U.S. Dept. of Labor Jan. 28, 2004) ........................... 13, 15

*Mulder v. Donaldson, Lufkin &Jenrette,*
    208 A.D.2d 301 ( 1st Dep't 1995) ............................................................... 18, 19

*Murray v. UBS Sec., LLC,*
    2017 WL 1498051 (S.D.N.Y. Apr. 25, 2017) ...................................... 9, 15, 16, 17

iv

*Narvate v. Chase Manhattan Bank,*
    1998 WL 690059 (S.D.N.Y. Oct. 2, 1998) ................................................... 18

*Nielsen v. AECOM Tech. Corp.,*
    762 F.3d 214 (2d Cir. 2014) ........................................................................ 14

*Richman v. Goldman Sachs Grp., Inc.,*
    868 F. Supp. 2d 26 n.3 (S.D.N.Y. 2012) ...................................................... 3

*Roelcke v. Zip Aviation, LCC,*
    2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018) .............................................. 24

*Rosenberg v. Salomon, Inc.,*
    992 F.Supp. 513 (D.Conn. 1997) ................................................................ 22

*SEC v. Capital Gains Res. Bureau, Inc.,*
    375 U.S. 180 (1963) ..................................................................................... 11

*SEC v. Moran,*
    944 F. Supp. 286 (S.D.N.Y 1996) .............................................................. 11

*SEC v. Tambone,*
    550 F.3d 106 (1st Cir. 2008) ....................................................................... 11

*Sharkey v. J.P. Morgan Chase & Co.,*
    805 F. Supp. 2d 45 (S.D.N.Y. 2011) ........................................................... 14

*Staron v. McDonald's Corp.,*
    51 F.3d 353 (2d Cir. 1995) ............................................................................ 9

*Sylvester v. Parexel Int'l LLC,*
    2011 WL 2517148 (U.S. Dept. of Labor May 25, 2011) ............................. 16

*Timian v. Johnson & Johnson,*
    2015 WL 6454766 (W.D.N.Y. Oct. 26, 2015) ............................................. 22

*Weiner v. McGraw—Hill, Inc.,*
    57 N.Y.2d 458 (1982) .................................................................................. 18

*Wiggins v. ING U.S., Inc.,*
    2015 WL 8779559 (D. Conn. Dec. 15, 2015) .................................... 12, 16, 17

*Zdenek Marek v. Old Navy (Apparel) Inc.,*
    348 F. Supp. 2d 275 (S.D.N.Y. 2004) ........................................................... 9

## **<u>Statutes</u>**

15 U.S.C. § 77q ............................................................................................... 16

15 U.S.C. § 80b-1 .............................................................................................. 2

15 U.S.C. § 80b-3 ............................................................................................ 16

15 U.S.C. § 80b-6 ................................................................................................................. 11

17 C.F.R § 275.206(4)-8 ....................................................................................................... 11

17 C.F.R. § 275.206(4)–8 ..................................................................................................... 12

17 C.F.R. § 275.206(4)-8(b) .................................................................................................. 2

18 U.S.C. § 1514A(a)(1) ................................................................................................... 9, 11

## **Other Authorities**

Advisers Act. Rel. No. 5248
        (June 5, 2019) at 6 ................................................................................................. 11

Regulation Best Interest, Exchange Act Release No. 34-86031 (June 5, 2019),
        https://www.sec.gov/rules/final/2019/34-86031.pdf ....................................... 11

Wright and Miller, 5 Federal Practice and Procedure:
        Civil 2d § 1283, at 537 (1990) ............................................................................ 25

Plaintiff John "Jack" Yang ("Mr. Yang" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion filed by Defendants The Bank of New York Mellon Corporation ("BNY Mellon"), Alcentra NY, LLC ("Alcentra NY"), and Alcentra Limited ("Alcentra Limited") (together "Defendants") to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This Action concerns the good-faith reporting by Plaintiff, a former employee of BNY Mellon and Alcentra NY, of imminent violations involving Alcentra NY, a registered investment adviser, and the subsequent months-long retaliatory campaign that Defendants waged against him. Plaintiff brings this Action to vindicate his rights as a whistleblower under Section 806 of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") and to recover millions of dollars in compensation.

Defendants have doubled-down on their efforts to discredit Mr. Yang and dilute the significance of his reporting.  Alcentra's management committee ignored the fiduciary duties that Alcentra NY owed to the Stira Alcentra Global Credit Fund ("Stira Fund" or "the Fund") and its investors, as a sub-adviser.  The management committee disregarded Alcentra NY's fiduciary duties despite material representations in the Stira Fund's prospectus that Alcentra NY, as the Fund's sub-adviser, was responsible for overseeing the Fund's investment strategy.  Plaintiff made his good-faith report to BNY Mellon about Alcentra NY's plan to immediately withdraw as sub-adviser to the Stira Fund and the consequences of such withdrawal despite the professional peril of directly challenging his boss.  Defendants punished Plaintiff for adhering to BNY Mellon's Code of Conduct obligating employees to report imminent violations of law, while promising them protection from retaliation.  To make matters worse, Defendants terminated Mr. Yang based on

1

pretextual violations of the company email policy in an effort to deprive him of his previously earned deferred compensation and his bonus for the year in which he was fired.

Defendants' motion is replete with obsolete case law misstating the applicable standards for whistleblower protections—standards which, to effectuate the very purpose of Sarbanes-Oxley, are purposefully liberal and whistleblower-friendly. And, none of Defendants' various theories seeking to dismiss Plaintiff's claims account for Plaintiff's status as a whistleblower. Defendants characterize Mr. Yang's genuine concerns about Alcentra NY's attempted withdrawal as a sub-adviser from the Stira Fund as a protest about the timing of the withdrawal. But, that argument ignores the substance of Mr. Yang's complaint—namely that he was concerned that Alcentra NY was knowingly abdicating its fiduciary duties to shield itself from financial losses. *See* AC 31-34.

Defendants' argument that Plaintiff's compensation agreements are not contracts is unavailing because New York law does not recognize that argument when there has been retaliation against a whistleblower or a wrongful termination. Finally, Defendants ask the Court to resolve contested factual issues, which is an inappropriate on a motion to dismiss.

## ALLEGATIONS OF THE COMPLAINT

### A.    Alcentra NY Represented That It Would Act As Sub-Adviser for the Fund.

Alcentra NY, LLC is a wholly-owned subsidiary of BNY Mellon, AC ¶ 2, and a registered investment adviser under the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.* and its rules and regulations, AC ¶ 27. In 2017, Alcentra NY agreed to serve as a sub-adviser to the Stira Fund, an investment company registered under the Investment Company Act of 1940, and a "pooled investment vehicle" under 17 C.F.R. § 275.206(4)-8(b). On March 23, 2017, Alcentra NY entered into an investment sub-advisory agreement with Stira Investment Adviser, LLC ("Stira Adviser"), pursuant to which Stira Adviser delegated substantially all of its portfolio-management obligations for the Fund to Alcentra NY. AC ¶ 31; Dkt. No. 27, Ex. B ("Subadvisor Agreement").

The Fund's prospectus, filed with the Securities and Exchange Commission ("SEC") on February 5, 2018, emphasized the Fund's reliance on Alcentra NY's relationship with BNY Mellon "to source deal flows and referrals" and Alcentra NY's "proprietary access to the BNY Mellon Wealth Management platform."[1]   AC ¶¶ 32-33.   Indeed, the Fund represented that its "future success depends to a significant extent on the continued service and coordination of the Sub-Adviser."   AC ¶ 35.   In addition to Alcentra NY's contacts and resources, the Prospectus described Alcentra NY's obligations as managing the Fund's investment portfolio, which includes, "mak[ing] investment decisions for the Fund and execut[ing] on its trading strategies, and "attending regular Board meetings."   AC ¶ 34.   The Prospectus also described the Fund's investment strategy as follows:  capital raised for the Fund is initially invested in liquid securities while Alcentra NY "originated or structured" loans to add to the fund.   AC ¶ 36.   Neither the Prospectus nor the sub-advisory agreement permitted unilateral termination from Alcentra NY within the first twenty-four months of the sub-advisory relationship.   AC ¶¶ 62-63.

**B.     Mr. Yang Was A Consistently High Performing Employee Until He Reported His Concerns About Alcentra NY.**

Defendants recruited Mr. Yang to join BNY Mellon in March 2013, and hired him pursuant to the terms of an offer letter dated March 8, 2013.   AC ¶ 44; Dkt. No. 27, Ex. J ("Offer Letter"). The Offer Letter stated that Mr. Yang would be subject to the Alcentra Incentive and Long Term Incentive Plan (the "LTIP") and the Alcentra Limited & Alcentra NY LLC Long Term Incentive Cash Award Plan (the "Cash Plan").   Dkt. No. 27, Ex. F ("LTIP"); *Id.*, Ex. G ("Cash Plan").

Until Defendants terminated him in January 2019, AC ¶ 46, Mr. Yang was responsible for attracting and securing investors to increase Alcentra's assets under management ("AUM").

---

[1]   "The Court can take judicial notice of SEC filings."  *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 273 n.3 (S.D.N.Y. 2012).

Under Mr. Yang's leadership, his team brought in record investor capital commitments and grew the total AUM from approximately $15 billion to $40 billion, AC ¶ 50, and Alcentra vaulted up the industry rankings, AC ¶ 51.  Mr. Yang was swiftly promoted through the executive ranks, and in January 2016, became the Head of the Americas for Alcentra NY, where he was directly responsible for many of Alcentra NY's largest, most profitable, and strategic U.S.-based investors and for leading Alcentra's global fundraising campaigns.  AC ¶ 46.  Mr. Yang also was a member of the Alcentra management committee, along with Alcentra's CEO, David Forbes-Nixon (to whom Plaintiff directly reported), then-Chief Investment Officer, Vijay Rajguru, and the CFO. AC ¶ 47.  In addition to leading Alcentra's domestic efforts, starting in January 2016, Mr. Yang also oversaw the company's securities activities and its compliance with FINRA regulations as the FINRA Series 24 Supervisor for Alcentra NY and Mellon Bank Securities Corporation.  AC ¶ 48.

As a result of his efforts, Mr. Yang received year-end bonuses reflecting an almost ten-fold increase of his annual base salary.  AC ¶ 52.  Up until 2018, Plaintiff received year-end ratings of "Exceeded Expectations" or "Achieved Expectations."  AC ¶ 109.

### C.     Alcentra NY Planned To Immediately Cease Serving As Sub-Adviser To The Fund.

Over time, BNY Mellon became critical of Alcentra NY's decision to serve as sub-adviser to a non-BNY Mellon affiliate.  By summer of 2018, BNY Mellon's Chief Executive Officer of Investment Management was pressuring Mr. Forbes-Nixon to address the Fund's lackluster growth and profitability.  AC ¶ 4.  Rather than propose a constructive solution, Mr. Forbes-Nixon decided to immediately cease Alcentra NY's sub-advisory services contrary to the terms of the prospectus.

On August 21, 2018, two days before the Stira Fund's August 23 board meeting, the Alcentra management committee convened in London, as both Mr. Forbes-Nixon and Mr. Rajguru were based there.  AC ¶ 164.  Mr. Forbes-Nixon announced to the management committee that

Alcentra NY would resign as sub-adviser as soon as possible.  AC ¶ 58.  Mr. Forbes-Nixon relayed

the pressure he was under from Alcentra's BNY Mellon Board members.  AC ¶ 58.  Mr. Yang's

pleas that Alcentra NY had only just embarked with the Stira Fund on a five-year fundraise fell on

deaf ears.  AC ¶ 59.  Even when Alcentra's Chief Financial Officer noted that immediate

termination was impossible as Alcentra NY was obligated to provide ninety days' notice, AC ¶ 61,

Mr. Forbes-Nixon remained stalwart in his view that the Stira Fund was bad for Alcentra's business.

Mr. Forbes-Nixon's plan to immediately resign was also shared by Mr. Rajguru.  AC ¶ 64.

The resignation was announced without formal deliberation.  No alternative course of action was

discussed at the meeting.  No formal vote was taken among the members of the Alcentra

management committee.  AC ¶ 70.  The CEO and CIO were resolute that the only solution was to

withdraw and to let the Stira Fund and its investors flounder on their own.  Indeed, immediately

following the meeting, Mr. Rajguru formalized Mr. Forbes-Nixon's plan.  In an email from Mr.

Rajguru to Plaintiff and the co-heads of U.S. direct lending, Mr. Rajguru directed that there were

to be *no more investments, no more meetings, no more updates* provided to Stira Fund by

Alcentra NY.  AC ¶ 66. Under the terms of this directive ("the Directive"), the co-heads of direct

lending would be barred from attending the Stira Fund Board meeting scheduled on August 23,

and would not provide the updates required of them.  *Id.*

> **D.** **Plaintiff Reported The Directive To BNY Mellon.**

Realizing that neither Mr. Forbes-Nixon nor Mr. Rajguru were willing to entertain any

opposition to their plan, Plaintiff alerted both the Stira Fund and BNY Mellon of the Directive.

AC ¶¶ 67, 76-80.  Plaintiff believed the Directive was part of a pattern of non-compliance with

U.S. securities laws within Alcentra management.  As a BNY Mellon employee, Plaintiff was

aware of prior potential violations of the Investment Company Act of 1940 involving other

Alcentra entities that had required the intervention of BNY Mellon's Legal and Compliance

departments.   AC ¶ 75.   Plaintiff knew of issues related to communications, disclosures, and valuations at Alcentra Capital Corporation, which involved the same London-based executives who issued the Directive to Alcentra NY.  AC ¶ 164.

To prevent another imminent violation, on or about August 21 or 22, Plaintiff contacted BNY Mellon's Counsel for the Stira Fund, whose practice focused on legal issues regarding funds regulated under the Investment Company Act of 1940, AC ¶ 76, and relayed the plan to implement the Directive, AC ¶ 77.  In both his roles as Head of the Americas and FINRA Supervisor, AC ¶¶ 3, 48, Plaintiff was aware that as an investment adviser, Alcentra NY owed fiduciary duties to its clients—in this case, the Fund and its investors, AC ¶ 6.  Plaintiff was also aware that an investment adviser was prohibited from making materially false or misleading statements or omissions to investors, particularly regarding investment strategies.  AC ¶ 7.

Plaintiff reported to BNY Mellon's Counsel that Alcentra NY's course of action was not proposed as the result of any deliberative process—Mr. Rajguru issued the Directive to forgo attending the Board meeting and acting as sub-adviser even after learning that resignation was prohibited under the terms of the sub-advisory agreement.  AC ¶ 78.  Plaintiff told BNY Mellon's Counsel that Alcentra NY's decision to terminate its sub-advisory role was motivated entirely by its desire to mitigate its own losses—indeed, Mr. Forbes-Nixon had made it plain that he was under pressure from his boss and other board members to jettison the business partnership with the Fund. The best interests of the Fund and its investors were not considered.  AC ¶ 79.  Further, Mr. Yang noted the Directive would breach the representations in the Fund's prospectus that Alcentra NY was responsible for investment decisions and would attend Fund Board meetings.  AC ¶ 77.

To avert an impending disaster, Plaintiff requested that BNY Mellon Counsel contact Mr. Forbes-Nixon and Mr. Rajguru and explain that Alcentra NY was bound by certain fiduciary duties

as an investment sub-adviser and the Directive was incompatible with these duties.  To put an end to this pattern of non-compliance, Mr. Yang also suggested that both London-based executives receive additional training and guidance on U.S. compliance and legal issues.  AC ¶ 83.  BNY Mellon Counsel agreed with Mr. Yang's assessment, and shared his concerns.  AC ¶ 87.  As a result, BNY Counsel advised Mr. Rajguru that Alcentra NY would not be resigning.  AC ¶ 87.

Not only did Plaintiff report to BNY Mellon Counsel to address a systemic problem within Alcentra's management, Plaintiff was obligated to report under the terms of BNY Mellon's Code of Conduct.  The Code directs employees that if they "believe someone is doing—or about to do— something that violates the law…[they] must raise it promptly."  AC ¶ 86; Dkt. No. 27, Ex. K.

### E.     Alcentra NY Did Not Implement The Investment Strategy In The Prospectus.

As a result of Plaintiff's reporting, the Alcentra management committee did not formally resign as sub-adviser.  However, in the ensuing months, it nonetheless ceased implementing the Fund's investment strategy.  AC ¶ 88.  Despite the fact that the Stira Fund's prospectus represented that the Fund invested in directly originated loans, AC ¶ 32, Alcentra NY attempted to buy back loans from the Fund, to strip the Stira Fund of its few remaining good assets.  Having failed in that endeavor, Alcentra NY resolved to no longer place any additional loans in the fund, thereby constructively resigning as sub-adviser.  AC ¶¶ 93-95.  At no time did Alcentra NY disclose to the investors in the Fund that it had abandoned the investment strategy or constructively resigned.  AC ¶ 96.  Despite Plaintiff's request that Mr. Forbes-Nixon and Mr. Rajguru receive additional training, they continued to lead Alcentra NY's efforts to dismantle the Fund.  AC ¶ 95.

### F.     After Mr. Yang's Reports, Defendants Retaliated Against Him.

After Mr. Yang raised his concerns, Defendants commenced a retaliatory campaign to terminate his employment.  Among other things, his reporting implicated his boss, Mr. Forbes-Nixon, whose own job was in peril due to intense scrutiny of the perceived failures of the Stira

Fund relationship.  AC ¶¶ 4, 100.  Plaintiff's report revealed that Mr. Forbes-Nixon's failed leadership and ignorance of federal securities laws risked espousing Alcentra NY to liability. Plaintiff's report caused Mr. Forbes-Nixon significant personal and professional embarrassment.

Mr. Forbes-Nixon engaged in a months-long campaign to retaliate against Mr. Yang, despite BNY Mellon's Code of Conduct expressly assuring employees of "zero tolerance for acts of retaliation."  AC ¶ 98; Code of Conduct at 9.  Throughout the fall of 2018, Mr. Forbes-Nixon sidelined Plaintiff from critical decisions involving Alcentra NY's sub-adviser relationship.  AC ¶ 97.  He refused to engage with Plaintiff on matters that required Mr. Forbes-Nixon's attention, including bonus awards to Plaintiff's direct reports, and ignored emails requiring responses, thereby preventing Plaintiff from managing his team and working to complete his year-end goals. AC ¶ 104.  When Plaintiff was able to get face-time with Mr. Forbes-Nixon, he publicly berated Plaintiff in the presence of colleagues and seized upon trivial matters, such as the submission of late expense reports and client meeting reports.  AC ¶ 103.

Despite Plaintiff meeting or exceeding his professional fundraising and corporate goals for Alcentra by year-end, AC ¶ 108, Mr. Forbes-Nixon gave Plaintiff a "Below Expectations" for 2018. AC ¶¶ 106-07.  Mr. Forbes-Nixon justified the rating on purported violations of BNY Mellon's email policy.  AC ¶¶ 14, 114-32.  Based on the "Below Expectations" rating, BNY Mellon slashed Mr. Yang's earnings, including by slashing his 2018 bonus by 80 percent.  AC ¶ 15.  Mr. Forbes-Nixon carried on his retaliatory campaign until January 2019 when Mr. Forbes-Nixon terminated Plaintiff based on the pre-textual email violations.  AC ¶¶ 16, 114-32.   In addition to his termination, Defendants withheld the multi-million dollars in long-term compensation that Plaintiff was awarded between 2016 and 2018.  AC ¶ 113.  When Defendants unlawfully

terminated Mr. Yang in January of 2019, they also withheld his significantly reduced 2018 incentive compensation.  *See* AC ¶ 113.

## LEGAL STANDARD

Where defendant moves to dismiss under Rule 12(b)(6), a court must construe "the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).  On a Rule 12(b)(6) motion, the Court is tasked "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Sterns & Co., Inc.*, 340 F.3d 94, 101 (2d Cir. 2003) (citation omitted).  The court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Zdenek Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 279 (S.D.N.Y. 2004). Dismissal is only appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995).

## ARGUMENT

### I.   PLAINTIFF HAS STATED A CLAIM FOR WHISTLEBLOWER RETALIATION UNDER SECTION 806 OF SARBANES-OXLEY.

Under Section 806 of Sarbanes-Oxley, a plaintiff's activity is protected if he (i) "provide[s] information, (ii) regarding any conduct which the employee reasonably believes constitutes a violation of…any rule or regulation of the Securities and Exchange Commission, to, *inter alia*, (iii) a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1); *Murray v. UBS Sec., LLC*, 2017 WL 1498051, at *8 (S.D.N.Y. Apr. 25, 2017).  The pleading standards for a Section 806 claim are liberal and whistleblower-friendly, recognizing that Sarbanes-Oxley "was

intentionally written to sweep broadly, protecting any employee of a publicly traded company who took such ***reasonable action to try to protect investors*** and the market." *Mahony v. KeySpan Corp.*, 2007 WL 805813, at *5 (E.D.N.Y. Mar. 12, 2007) (quoting 149 Cong. Rec. S1725–01, S1725, 2003 WL 193278 (Jan. 29, 2003)) (emphasis added).

At the motion to dismiss stage, "a plaintiff need not prove that the defendant violated the covered laws." *Berman v. Neo@Ogilvy LLC*, 2016 WL 7975001, at *6 (S.D.N.Y. Oct. 24, 2016). Rather, a complaint is sufficient if it gives defendants notice of "(1) the allegedly unlawful conduct; (2) the reason why the plaintiff believed that the conduct violated the covered laws; (3) the plaintiff's knowledge of and experience with the covered laws; and (4) the allegation that the plaintiff actually reported the allegedly unlawful conduct." *Id.* Mr. Yang meets each of these requirements.

### A. Plaintiff Engaged In Protected Activity By Reporting Concerns About Alcentra NY's Potential Violations of Securities Law.

Recognizing that they cannot dismiss the Complaint, Defendants attack Plaintiff's original complaint. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); Wright & Miller, Federal Practice and Procedure § 1476 (3d ed. 2019) ("once the original pleading is amended it no longer is part of the action"). Additionally, in attacking the nature of Mr. Yang's protected activity, Defendants ask the court to resolve contested factual issues, which is inappropriate on a motion to dismiss.

### 1. Plaintiff Provided Defendants With Notice Of Unlawful Conduct.

In August 2018, Plaintiff informed BNY Mellon's Counsel about imminent violations of Alcentra NY's fiduciary duties to the Stira Fund's investors and the prohibition against an investment adviser making materially misleading statements or omissions about its investment

strategy.  *See* 15 U.S.C. § 80b-6; 17 C.F.R § 275.206(4)-8; AC ¶¶ 6-7, 68-74, 76-80.  The plain

text of Section 806 expressly provides whistleblower protection for reporting violations of "***any***

rule or regulation of the Securities and Exchange Commission."  18 U.S.C. § 1514A(a)(1).

Section 206 of the Investment Advisers Act of 1940 is one such rule or regulation.  Case law

interprets Section 206 as codifying an investment adviser's non-waivable fiduciary duties of care

and loyalty.  *SEC v. Capital Gains Res. Bureau, Inc.*, 375 U.S. 180, 201 (1963); *see SEC v.*

*Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("Section 206 imposes a fiduciary duty on

investment advisers to act at all times in the best interest of the fund …"); *SEC v. Moran*, 944 F.

Supp. 286, 297 (S.D.N.Y 1996) (same); Goldman Sachs & Co., SEC Staff No-Action Letter

(June 20, 2013), https://www.sec.gov/divisions/investment/noaction/2013/goldman-sachs-

062013-iarule204-3.htm ("If a subadviser manages assets of a client and, therefore, may have an

investment advisory relationship with the client, the subadviser has responsibilities under the

Advisers Act to provide clients with various disclosures").[2] The SEC has made clear the duties of

an adviser are broad and dependent on the particular relationship an adviser has with a client.[3]

---

[2]  The SEC describes an investment adviser's fiduciary duty under the Advisers Act as "requir[ing] that an adviser ***adopt the principal's goals, objectives, or ends***."  *See* Regulation Best Interest, Exchange Act Release No. 34-86031 (June 5, 2019) ("Reg. BI Adoption") (emphasis added), https://www.sec.gov/rules/final/2019/34-86031.pdf.

[3]  Recent guidance from the SEC states: "The investment adviser's fiduciary duty is broad and applies to the entire adviser-client relationship. The fiduciary duty to which advisers are subject is not specifically defined in the Advisers Act or in Commission rules, but reflects a Congressional recognition 'of the delicate fiduciary nature of an investment advisory relationship' as well as a Congressional intent to 'eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested.'"  *See*, Advisers Act. Rel. No. 5248 (June 5, 2019) at 6.  Defendants' argument that this guidance contains no discussion of a sub-adviser's duty to provide sub-advisory services after a sub-adviser terminates a contract (Def. Br. at 17 n. 11) is misleading because the guidance does not recite every single fiduciary duty  an adviser owes a client, but rather emphasizes that the duties an adviser has to a client are "broad." *Id.* at 6.

Both courts and administrative law judges have held that whistleblowers engage in "protected activity" when alleging an investment adviser has breached their fiduciary duties. *See Wiggins v. ING U.S., Inc.*, 2015 WL 8779559, at \*6 (D. Conn. Dec. 15, 2015) (denying motion to dismiss where plaintiff alleged "she knew that federal securities laws required [the investment adviser]…to act in the best interests of clients in accordance with fiduciary duty obligations"); *see also In re Bentzion S. Turin v. Amtrust Financial Services, Inc. et al*., 35 IER Cases 458, 2013 WL 1497073 (Mar. 29, 2013) (ALJ) (reversing dismissal of Section 806 claim and specifically describing the protected activity as "complaining to Zyskind and Raschbaum about their fiduciary duties to the company"); *In re John Hughart v. Raymond James & Associates, Inc.*, 2004 WL 5308719 (U.S. Dept. of Labor Dec. 17, 2004) (holding plaintiff engaged in protected activity under SOX where plaintiff "reasonably believed that Raymond James was not meeting its fiduciary obligation by failing to take sufficient steps to protect its clients' unclaimed property").  The Complaint alleges Alcentra's management committee issued the Directive to stop advising the Stira Fund absent any deliberative process and only to protect its own financial interests, notwithstanding the public commitments Alcentra made to the Fund and its investors.

In addition to reporting his reasonable belief of Alcentra NY's failure to follow its fiduciary duties, Plaintiff reported that the investment adviser's conduct was inconsistent with representations made to the investing public.  The Complaint alleges that because Alcentra NY was serving as an adviser to a pooled investment vehicle, it was also subject to 17 C.F.R. § 275.206(4)–8 ("Rule 206(4)-8").[4]  AC ¶ 28.  Rule 206(4)-8 prohibits Alcentra NY from making

---

[4]   Defendants rely on *Goldstein v. SEC,* 451 F.3d 873 (D.C. Cir. 2006) to claim (incorrectly) that Alcentra NY did not owe duties to the investors in the fund.  As a threshold matter, *Goldstein* is no longer good law.  Indeed, the SEC issued 206-4(8) "in response to the opinion of the Court of Appeals for the District of Columbia Circuit in *Goldstein v. SEC*, which created some uncertainty

any false or misleading statements or omissions of material fact ***to investors*** regarding investment strategies the Stira Fund would use and practices Alcentra NY would follow regarding its allocation of investment opportunities for the fund.   AC ¶ 38.   Because the Fund's prospectus represented that the management of the fund was Alcentra NY's responsibility, AC ¶ 34, Alcentra NY's absence from the upcoming Fund Board meeting and refusal to provide updates represented a material divergence from the Fund's prospectus, AC ¶¶ 72-73.

To the extent Alcentra NY's conduct also breached its contractual obligations, such a finding does not preclude Mr. Yang's whistleblower claim.   Defendants' specious claim that the only issue is the timing of Alcentra NY's resignation under the sub-adviser agreement is wrong on the facts, law, and policy underlying Sarbanes Oxley.   *See Morefield v. Exelon Servs., Inc.*, 2004 WL 5030303 at *2 (U.S. Dept. of Labor Jan. 28, 2004) ("it does not serve the purposes or policies of [SOX] to take too pinched a view of this remedial statute").   As an initial matter, Defendants ask the court to resolve a contested interpretation of the sub-advisory agreement—which is clearly inappropriate on a motion to dismiss.   Critically, Defendants cite no authority for the claim that a breach of contract forecloses a finding of protected activity.   The complaint in *In re Anita Johnson v. Wellpoint, Inc.*, 2011 WL 764714 (U.S. Dept. of Labor Feb. 25, 2011), (Def. Br. at 16-17), was dismissed following fulsome discovery (which has not taken place here), for failure to "definitively and specifically" report the elements of wire and mail fraud (a requirement which is now obsolete, *see infra*).   *Johnson* does not stand for the proposition that a whistleblower fails to engage in protected activity where the violation might also be a breach of contract.   *Diaz v. Transatlantic*

---

regarding the application of sections 206(1) and 206(2) of the Advisers Act in certain cases where investors in a pool are defrauded by an investment adviser to that pool."   AC ¶ 28 n.1 (attaching copy of the Final Rule 206-4(8) published by the Securities and Exchange Commission).

*Reinsurance Co.*, 2016 WL 3568071 (S.D.N.Y. June 22, 2016), (Def. Br. at 17) involved **no** alleged contractual breach.

**2.      Plaintiff Reported His Beliefs To BNY Mellon.**

Contrary to Defendants' misstatement of applicable law, a whistleblower "need not cite a code section he believes was violated in his communication to his employer." *Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 56 (S.D.N.Y. 2011) (internal citation omitted)); *Barker v. UBS AG*, 888 F. Supp. 2d 291, 297 (D. Conn. 2012) (same).  Indeed, the Second Circuit has rejected a restrictive standard requiring that an employee's reporting "relate definitively and specifically" to the subject matter ... of the listed categories of fraud or securities violations." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014).[5]

Here, the Complaint alleges that Plaintiff reported to BNY Mellon Counsel for the Stira Fund that Alcentra NY's immediate resignation "would breach its fiduciary duties as an investment adviser under the 1940 Act to provide advice to the Stira Adviser, to monitor the Stira Fund, and to act in the best interests of the fund…[and] would breach Alcentra NY's explicit representations in the Stira Fund prospectus that it would make investment decisions for the Stira Fund, execute on its trading strategies, keep the Stira Adviser updated with financial progress, and attend regular meetings." AC ¶ 77.  In addition, the Complaint alleges that Mr. Yang believed that Alcentra NY's planned conduct would subject both Alcentra NY and the Stira Fund to liability under Sections 77 and 80 of the Securities Act of 1933 by failing to update the fund's prospectus with material post-effective developments. See AC ¶ 8.

---

[5]  Defendants' digression regarding "unreported…beliefs" mischaracterizes the sufficiency of allegations in the Complaint. *Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp. 2d 310 (S.D.N.Y. 2006), on which defendants rely, (Def. Br. at 13), was superseded by the Second Circuit's decision in *Nielsen*.

The fact that Plaintiff did not cite to specific statutes and regulations in the securities laws when he spoke to BNY Counsel is of no legal consequence.  There is no legal requirement that Plaintiff must cite federal securities laws chapter and verse.  *Murray v. UBS Sec., LLC*, 2017 WL 1498051, at *9 (S.D.N.Y. Apr. 25, 2017) (rejecting "the proposition that a plaintiff's failure to match the conduct he believes to be illegal with the precisely applicable securities law or regulatory provision forecloses a whistleblower claim," noting that "Defendants' proposed narrowing would be in tension with the Second Circuit's decision in *Nielsen*.").  Indeed, the *Nielsen* standard comports with the policy goals of protecting whistleblowing activity.  "Courts have recognized that it would it be unfair to expect a plaintiff seeking to inform his boss of financial misbehavior to have a working knowledge of the United States Code."  *Morefield v. Exelon Servs., Inc.*, 2004 WL 5030303, at *6 (Dept. of Labor, ALJ, Jan. 28, 2004).

Similarly, Plaintiff's reporting is protected even though the imminent violation did not ripen into an actual violation *because* of his whistleblowing activity.  *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 446 (S.D.N.Y. 2013) ("[I]t would frustrate the purpose of Sarbanes-Oxley to require an employee, who knows that a violation is imminent, to wait for the actual violation to occur…").  It was due to Plaintiff's prescient reporting to BNY Mellon Counsel that Alcentra NY did not immediately resign as sub-adviser and a representative from Alcentra NY was authorized to attend the August 23, 2018 Stira Fund Board meeting.  AC ¶ 87.

### 3.   Plaintiff's Belief Of A Violation Was Subjectively and Objectively Reasonable.

Plaintiff's belief that the conduct violated the covered laws was based on his understanding of Alcentra NY's obligations as an investment adviser and his knowledge of prior violations involving the same individuals at Alcentra.  The prevailing law in this Circuit "turns on the reasonableness of the employee's belief that the conduct violated one of the enumerated

provisions." *Murray v. UBS Sec., LLC*, 2017 WL 1498051, at *9 (S.D.N.Y. Apr. 25, 2017) (denying defendants' motion for summary judgment). Thus, Plaintiff's reporting is protected even if it is based on a mistaken belief, *Sylvester v. Parexel Int'l LLC*, 2011 WL 2517148, at *14 (U.S. Dept. of Labor May 25, 2011), and "even if the [complained of] conduct turns out not to be fraudulent,"[6] *Wiggins*, 2015 WL 8779559, at *3. The "focus" of the analysis "is on the plaintiff's state of mind rather than on the defendant's conduct[.]" *Murray, LLC*, 2017 WL 1498051, at *10(quoting *Guyden v. Aetna, Inc.,* 544 F.3d 376, 384 (2d. Cir. 2008)). Mr. Yang's allegations satisfy the "subjectively reasonable" standard, which simply requires that the employee "actually believed" that the conduct complained about violated the law. *Gladitsch v. Neo@ogilvy*, *Ogilvy, Mather, WPP Group USA, Inc.*, 2012 U.S. Dist. LEXIS 41904 (S.D.N.Y. Mar. 21, 2012). The Complaint details Mr. Yang's beliefs and their basis. AC ¶¶6-11.

Mr. Yang's complaints were also objectively reasonable, under the broadly liberal pleading standards of Section 806. *First*, as a senior executive in the banking industry, Plaintiff was aware that Alcentra NY was a registered investment adviser and that investment advisers owe fiduciary duties to their clients. Plaintiff attended the August 21 Alcentra management committee meeting during which Mr. Forbes-Nixon announced the Directive to immediately resign and cease servicing the Stira Fund and its investors and that this decision did not reflect the interests of the Stira Fund or its investors. AC ¶¶ 70-71. Mr. Yang was also aware that Alcentra NY was responsible for managing the Fund's investment portfolio and the Directive,

---

[6] Defendants' digressions into who precisely may be sued for failure to amend or supplement the prospectus is a red herring given 15 U.S.C. § 77q imposes liability for causing a false prospectus to be filed. Plaintiff is not claiming that Alcentra NY was responsible for amending or supplementing the prospectus to reflect material post-effective developments. Rather, Plaintiff claims that Alcentra NY may have been subject to regulatory penalties under 15 U.S.C. § 80b-3 from causing materially false and misleading statements in the prospectus. AC ¶¶ 68, 74.

disclaiming any future involvement, was totally incompatible with the representations in the prospectus. AC ¶¶ 72-73. And, Mr. Yang was aware that the Fund's prospectus marketed Alcentra NY's involvement to investors. AC ¶ 60.

*Second*, Mr. Yang was aware of a culture of non-compliance within Alcentra involving the same London-based executives. AC ¶¶ 82, 164. Plaintiff was aware that Mr. Forbes-Nixon was unwilling to tolerate opposition to the announced resignation. AC ¶¶ 60, 64. Indeed, Section 806's whistleblower protections are designed for precisely this type of "corporate culture . . . that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities . . . but even internally." S. Rep. No. 107-146, at 5 (2002).

Defendants' claim that Plaintiff's experience in fundraising rendered him an expert in securities law, and that the reasonableness of his belief must be judged against that standard, also fails. The Complaint does not allege Plaintiff has any legal training—because he has none. Rather, Plaintiff's years of professional experience are primarily in marketing, sales, and fundraising. AC ¶¶ 41, 44. Plaintiff's registration with FINRA and role as FINRA Series 24 Supervisor for Alcentra NY and Mellon Bank Securities Corporation, AC ¶ 48, meant that he was aware of fiduciary duties owed by investment advisers to their clients. It does not mean that he was a legal expert. "Plaintiff's securities licenses and experience, while notable, do ***not*** make him a securities lawyer or compliance official attuned to the elements of specific statutory or regulatory violations of the securities laws, and certainly do not foreclose a whistleblower claim as a matter of law." *Murray v. UBS Sec., LLC*, 2017 WL 1498051, at *10 (S.D.N.Y. Apr. 25, 2017) (emphasis added); *see Wiggins*, 2015 WL 8779559, at *7 (denying motion to dismiss where plaintiff-whistleblower was registered with FINRA and knew that a "registered investment adviser" was "required to comply with the Investment Adviser's Act of 1940" including to upholding fiduciary duties owed to its

clients"). For the foregoing reasons, Mr. Yang's Complaint sufficiently alleges that he engaged in "protected activity."

## II.     DEFENDANTS' REMAINING ARGUMENTS ARE UNAVAILING.

### A.     Plaintiff Has Pled Viable Contract Claims, Which Should Not Be Dismissed.

As a threshold matter, none of Defendants various theories account for the fact that Plaintiff reported illegal or unethical conduct. Nor do Defendants address that New York law has strong protections to guard against retaliation for such activity, especially when an employee is "at-will" and their employer has a code of conduct that expressly limits retaliation against employees who engage in protected activity.

#### 1.     Plaintiff's Compliance With Defendants' Code of Conduct Creates An Exception to At-Will Employment.

Plaintiff does not dispute that the offer letter states he was an "at-will employee." *See* Offer Letter. While ordinarily an employer has an unfettered right to terminate an at-will employee, that right can be limited by the Constitution, a statute, or by an express limitation in the applicable contract of employment. *See Mulder v. Donaldson, Lufkin &Jenrette*, 208 A.D.2d 301, 305 ( 1st Dep't 1995) (citing *Weiner v. McGraw—Hill, Inc.,* 57 N.Y.2d 458, 457 (1982). Courts in New York have held that language in a corporate code of conduct requiring employees to report wrongful activity can create an express limitation to at-will employment for such employees who are terminated following their reporting in accordance with such a code of conduct. *See Narvate v. Chase Manhattan Bank*, 1998 WL 690059, at *2 (S.D.N.Y. Oct. 2, 1998) (denying motion to dismiss breach of contract claim because defendant's employee manual provided that no action would be taken against employees who made a good faith report of a violation of law); *Criado v. ITT Corp.*, 1993 WL 322837 (S.D.N.Y. Aug. 16, 1993) (upholding jury verdict of breach of contract for terminated New York employee based in part on defendant employer's corporate code

that employees will not be penalized for reporting a belief that "any illegal or unethical conduct has occurred or is planned by anyone" *id*. at 2); *Cucchi v. New York City Off-Track Betting Corp*., 818 F. Supp. 647 (S.D.N.Y. 1993) (holding that where employer agrees to "limit its termination rights, the employer may no longer terminate the employee at-will,"*id*. at 649).

Here, both the facts pled and Defendants' own exhibits demonstrate that BNY Mellon's Code of Conduct expressly limited the company from terminating an employee like Plaintiff for reporting good-faith concerns about imminent legal or ethical violations.  *See* AC ¶ 86, ¶ 98, ¶¶ 181-86; *see also* Code of Conduct at 8.  The Code of Conduct requires employees to "promptly" report concerns of a legal or ethical violation.  *See* AC ¶ 86; Code of Conduct at 8 ("[Y]ou must raise it promptly.").  The Code of Conduct ***assures*** employees of the company's "Zero Tolerance for Retaliation," including that "[n]o one has the authority to justify an act of retaliation.  Any employee who engages in retaliation will be subject to disciplinary action, which may include dismissal."  *See* AC ¶ 98; Code of Conduct at 9.  In requiring BNY Mellon employees to report imminent legal or ethical concerns, BNY Mellon modified its termination rights with respect to Mr. Yang.  *See Mulder v. Donaldson, Lufkin & Jenrette*, 208 A.D.2d at 307(basing plaintiff's breach of contract claim on the promise of protection against reprisal in manual for reporting misconduct, which imposed an "express limitation on the right of [defendant] to terminate employees who make such reports").  Like *Mulder*, Plaintiff is an at-will employee who reported conduct that he believed violated the law.  Thus, based upon Defendants' retaliatory conduct, Plaintiff has a valid breach of contract claim, which includes, as damages, the unlawful withholding of his long-term compensation.

Nothing in the BNY Mellon Code of Conduct precludes Mr. Yang's breach of contract claim. The Code's language does not expressly state "this is not a contract of employment."[7] Defendants' exclusively rely on cases in which the relevant code of conduct expressly stated it was "not a contract of employment" and that nothing in the company's policies should be construed as a promise of any kind, or creating a contract regarding wages or other working conditions." *Diaz v. Transatlantic Reinsurance Co.*, 2016 WL 3568071, at *6 (S.D.N.Y. June 22, 2016).  The express language required to defeat the breach of contract claim simply does not exist here.  *See Baron v. Port Authority of New York and New Jersey*, 271 F.3d 81,86 (2d Cir. 2001) (holding the language of the contract "expressly and specifically disavow[ed] any intent on the Port Authority's part to accept contractual limitations on its rights as an at-will employer").  Similarly, *Geldzahler v. New York Medical Coll.*, 663 F. Supp. 2d 379, 388 (S.D.N.Y. 2009), is factually unrelated and irrelevant because plaintiff did ***not*** allege any contract or "express written policy" limiting the defendant's right to terminate him.  In contrast, Mr. Yang has alleged such facts. *Jones*, 2020 WL 1445728, at *3-4.

### 2.    The Offer Letter Was A Contract And Plaintiff's Allegations Demonstrate A Breach Of That Contract.

Courts in the Southern District of New York, interpreting New York law, have held that *unless* an offer letter unambiguously disclaims that it is a contract, courts may consider it an employment contract.  *See Jones v. Mercedes Benz Manhattan, Inc.*,  2020 WL 1445728, at *3-4 (S.D.N.Y. March 25, 2020) (offer letter disclaimer language does not mean that the offer letter is not a contract); *see also Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32 (S.D.N.Y. 2010) (quoting *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 548 N.Y.S. 2d 513, 516 (2d Dep't 1989))

---

[7]    Indeed, the Code of Conduct makes no reference to contracts, but simply says in very fine print at the bottom of the page that the "Code of Conduct does not alter the terms and conditions of your employment." Code of Conduct at 1.

(disclaimer language did not mean that "the Offer Letter is not a contract; rather, it means that plaintiff will be an at-will employee subject to discharge at any time").  Here, there was no language in the offer letter that explicitly and specifically disavowed the offer letter as a contract. The offer letter states: ". . . your employment with BNY Mellon . . .will remain at all times at will, and the employment relationship may be terminated at any time with or without cause."  Offer Letter at 6.  The language of the letter simply described the at-will relationship.

Defendants incorrectly argue that Plaintiff has not pointed to the provisions of the Offer Letter that have been breached.  (Def. Br. at 19).  To the contrary, Plaintiff alleges that Defendants have breached provisions in the Offer Letter regarding compensation, including the provisions that refers to the company's incentive plan, the requirements to become eligible to receive an incentive award, such as the timing and payment of that award.  *See* AC ¶¶ 176-87.  In addition, the Offer Letter states that Alcentra would take into consideration applicable, "legal," "regulatory" and "market practices" when determining the terms and conditions of the deferred compensation vesting schedule.  *See* Offer Letter at 1-2.[8]  Retaliating against an employee who reports what he reasonably believes to be misconduct runs afoul of federal and state law, SEC regulations, and BNY Mellon's own professed obligations.

### 3.    Plaintiff Has Stated A Breach of Contract Claim Based On Defendants' Failure To Provide Compensation Under The LTIP and Cash Plan.

Defendants' argument that Plaintiff has failed to state a claim because he seeks unvested awards under discretionary incentive plans is meritless.  (Def. Br. at 19).  New York has enacted strong protections for those who report illegal or unethical conduct, and courts may look beyond

---

[8]   The Offer Letter provides:  "Alcentra has absolute discretion to defer all or part of any incentive award issued to you or to which you may be entitled, and reserves the right to determine in its sole and absolute discretion the terms and conditions of deferral mechanism, the vesting and delivery schedule and any forfeiture and repayment provisions applicable to any award or payment (taking into account applicable legal and regulatory requirements and market practice."

the "plain text" of an employee plan if the benefit determinations were made in bad faith, fraudulently, or arbitrarily.  Indeed, Defendants recognize that Plaintiff may recover lost incentive compensation if he prevails on his Sarbanes Oxley whistleblower claim. (Def. Br. at 22).

Under New York law, if an employee is part of a "plan" that gives a "committee" sole discretion to interpret the plan and determine the employee's benefits under the plan, a court can review such determinations to see whether they were made fraudulently, in bad faith, or arbitrarily. *Lucente v. Int'l Bus. Machines Corp*., 262 F. Supp. 2d 109, 114–15 (S.D.N.Y. 2003) (citing cases); *see also Rosenberg v. Salomon, Inc.,* 992 F.Supp. 513, 517 (D.Conn. 1997) (applying New York law).  Thus, even assuming arguendo that language in the incentive plan documents grants BNY Mellon exclusive discretion as to how compensation is paid to Plaintiff pursuant to the awards, that does not mean *absolute* discretion, or discretion that is unreviewable by any court, especially in instances when a retaliation claim is alleged, as here.

Likewise, none of Defendants' cases address the allegation that Defendants unlawfully terminated Mr. Yang in retaliation for his whistleblowing, and then unlawfully rescinded his restricted units and options under the LTIP.  The first tranche would have vested on March 7, 2019, *but for* Defendants' unlawful termination of Mr. Yang a mere two months prior.  In fact, the case law that Defendants use to support their argument that Plaintiff is not entitled to bonuses or deferred compensation, *see* Def. Br. 20-22, is inapposite to the situation here.  In *Timian v. Johnson & Johnson,* 2015 WL 6454766 (W.D.N.Y. Oct. 26, 2015), the court dismissed a complaint where plaintiff alleged a breach of a long-term incentive plan after the sale of a company led to plaintiff losing her incentive awards which had not fully vested.  This situation is not like the case at bar where Plaintiff alleges that he lost his benefits in retaliation for his reporting of illegal or unethical conduct.  Similarly, the plaintiff in *Karmilowicz v. Hartford Fins. Servs. Group,* 2011 WL 2936013

(S.D.N.Y. July 4, 2011), *aff'd*, 494 F. App'x 153 (2d Cir. 2012) was not a protected whistleblower nor did he have a legitimate retaliation claim.  Likewise, *Kavitz v. IBM Corp.*, 458 F. App'x 18, (2d Cir. 2012) (summary order) did not involve a retaliation claim.  Thus, Defendants rely on cases that have no application to the allegations here.  The LTIP states that "[t]he validity, interpretation, construction and effect of the Plan and any rules and regulations relating to the Plan shall be governed by the laws of the State of New York."  LTIP at 18.  New York law does not allow defendants to hide behind the argument that the LTIP is "not a contract" as a shield for their unlawful retaliation.

Defendants also offer the notion that Plaintiff immediately forfeited all his unvested awards under both the LTIP and the Cash Plan upon his termination because, Defendants say, the plans "state unequivocally that unvested awards are forfeited upon the termination of employment."  Def. Br. at 21.[9]  However, this argument sidesteps the allegation that Defendants' termination of Plaintiff was improper.  Plaintiff has plausibly alleged he was terminated based on pre-textual violations of Defendants' email policies.  *See* AC ¶114.  Neither the LTIP nor the Cash Plan contemplate Defendants taking the extraordinary measure of firing Plaintiff in retaliation for reporting misconduct—which is what Plaintiff did in reporting to BNY Mellon Counsel for the Stira Fund.  Taking this into account, Defendants' forced forfeiture of Plaintiff's compensation awarded under the plans is illegal, not simply a matter left to employer "discretion."

---

[9]   The Defendants cite to §3.4 of the LTIP, which lists circumstances under which unvested awards are not forfeited—death, retirement, disability, redundancy—for example, and thus argue that none of these circumstances apply to Mr. Yang's employment.  Their argument implies that the LTIP Plan's §2.6, entitled "Forfeiture," applies to Yang because he (1) engaged in conduct that "warrants or could have warranted [his] dismissal, (including but not limited to breach of statutory or common law directors' fiduciary duties or  [his] express or implied duty of fidelity; (2) is a material breach of the applicable rules and regulations of the Company … (3) may result or have resulted in criminal prosecution … or the impositions of sanctions or censure … (4) results in either the need to make any financial restatements or financial irregularities …."  *See* LTIP at 3.

Last, Defendants argue that that Plaintiff cannot have a breach of contract claim that is independent of his Section 806 Sarbanes-Oxley claim. Defendants cite *no case law* for their position, which is in fact contrary to law. Numerous cases have pleaded both SOX and breach of contract claims under New York law. *See*, *e.g.*, *Ashmore v. CGI Group, Inc*., 2012 WL 2148899, (S.D.N.Y. June 12, 2012); *Fraser v. Fiduciary Tr. Co. Int'l*, 417 F. Supp. 2d 310 (S.D.N.Y. 2006).

### B.    Defendants Breached The Implied Covenant Of Good Faith and Fair Dealing.

Plaintiff's implied covenant claim is based on Defendants' bad faith exercise of their discretion under the LTIP and Cash Plan. *See Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 240 (S.D.N.Y. 1992) (denying motion to dismiss breach of implied covenant of good faith and fair dealing claim where plaintiff alleged defendant terminated him to avoid paying sales commissions). New York courts recognize that "even an explicitly discretionary contract [like the LTIP or Cash Plan] may not be exercised in bad faith. *Ahmed Elkoulily, M.D., P.C. v. New York State Catholic Healthplan, Inc*., 153 A.D.3d 768, 770 (2d Dep't 2017). But whether Defendants withheld Plaintiff's units as a result of bad faith is a contested factual issue—which is not properly before the court on a motion to dismiss. The Complaint alleges that Defendants acted in bad faith because the forfeiture was retaliatory and violated defendants' own legal obligations under Section 806 of Sarbanes-Oxley and BNY Mellon's Code of Conduct. AC ¶ 228. In addition, Defendants acted arbitrarily in finding that Plaintiff's conduct warranted forfeiture given that BNY Mellon's email policy was frequently violated and other employees were *not* terminated and did not forfeit their units for such violations. AC ¶¶ 130-31.

### C.    Mr. Yang States Claims For Unjust Enrichment And Quantum Meruit.

Mr. Yang's claims for unjust enrichment and *quantum meruit* may be pled in the alternative to his contract claim at this stage of the litigation. *Roelcke v. Zip Aviation, LCC*, 2018 WL 1792374, at *11 (S.D.N.Y. Mar. 26, 2018) (internal citations omitted) (denying motion to dismiss unjust

enrichment and *quantum meruit* claims).  Indeed, at the motion to dismiss stage, "[f]ederal courts have construed [the language of Rule 8(d)] to permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (citing Wright and Miller, 5 Federal Practice and Procedure: Civil 2d § 1283, at 537 (1990)) (internal quotations omitted).

Not only is Plaintiff not required to elect his remedies at this stage, Defendants have placed the nature of the LTIP and Cash Plan at issue by arguing that "They Are Not Contracts."[10] Defendants have thus created "a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue."  *Goldman v. Simon Prop. Grp., Inc.*, 869 N.Y.S.2d 125, 135 (2d Dep't 2008) (holding that "plaintiff may properly plead unjust enrichment and money had and received as alternative claims to the breach of contract claim"); *Knudsen*, 792 F. Supp. at 237 ("[W]hen the existence of the contract is in dispute, a plaintiff may plead breach of contract and *quantum meruit* in the alternative.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied in its entirety.

---

[10]  Defendants' reliance on *Aledia v. HSH Nordbank AG* is likewise misplaced.  There, the court noted that a party could not recover in *quantum meruit* "if the parties have a ***valid, enforceable contract*** that governs the same subject matter as the *quantum meruit* claim."  2009 WL 855951 at *3 (S.D.N.Y. Mar. 25, 2009) (emphasis added).  Defendants dispute whether the LTIP and Cash Plans are contracts.  Def. Br. at 19.  On this basis, plaintiff's *quantum meruit* claim should stand.

Dated:      New York, New York          QUINN EMANUEL URQUHART &
               August 10, 2020              SULLIVAN, LLP

/s/ *Manisha M. Sheth*
Peter E. Calamari
Manisha M. Sheth
Kimberly E. Carson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel:  212-849-7000
Fax:  212-849-7100
petercalamari@quinnemanuel.com
manishasheth@quinnemanuel.com
kimberlycarson@quinnemanuel.com
*Attorneys for Plaintiff John ("Jack") Yang*

26

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I hereby certify that on August 10, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ Manisha M. Sheth</u>
Manisha M. Sheth