UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN "JACK" YANG,<br><br>Plaintiff,<br><br>vs.<br><br>THE BANK OF NEW YORK MELLON CORPORATION, ALCENTRA NY, LLC, and ALCENTRA LIMITED,<br><br>Defendants. | Case No. 1:20-cv-03179-AJN |

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

MORGAN, LEWIS & BOCKIUS LLP

Michael L. Banks (*pro hac vice*)
W. John Lee (*pro hac vice*)
Shannon L.C. Ammon (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
Michael.Banks@morganlewis.com
W.John.Lee@morganlewis.com
Shannon.Ammon@morganlewis.com

*Attorney for Defendants The Bank of New York Mellon Corporation, Alcentra NY, LLC, and Alcentra Limited*

## TABLE OF CONTENTS

 Page

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT ......................................................................................................................2

    A. Plaintiff's Opposition Confirms That The FAC Contains No Factual Allegations Plausibly Showing That He Engaged In Protected Activity Under SOX ...............................................................................................................2

    B. Plaintiff's Breach Of Contract Claims Fail As A Matter Of Law .........................7

        1. Mr. Yang Cannot Sustain His "Breach of the Offer Letter" Claim............7

        2. Plaintiff's Claims for Breach of Long-Term Incentive Plans Fail as a Matter of Law .........................................................................................9

    C. Plaintiff's Quasi-Contract Claims Also Fail........................................................10

III. CONCLUSION .................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashmore v. CGI Grp. Inc.*,
  No. 11-cv-8611, 2012 WL 2148899 (S.D.N.Y. June 12, 2012) .......................................... 9, 10

*Cooper v. Slice Techs., Inc.*,
  No. 17-cv-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ................................................. 8

*De Petris v. Union Settlement Ass'n, Inc.*,
  86 N.Y.2d 406 (N.Y. 1995) ..................................................................................................... 8

*Diaz v. Transatlantic Reinsurance Co.*,
  No. 16-cv-1355, 2016 WL 3568071 (S.D.N.Y. June 22, 2016) ........................................... 4, 8

*Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC*,
  No. 08-09101, 2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009) .............................................. 8, 11

*Fraser v. Fiduciary Trust Co. Int'l*,
  417 F. Supp. 2d 310 (S.D.N.Y. 2006) ..................................................................................... 9

*Friedl v. City of New York*,
  210 F.3d 79 (2d Cir. 2000) ...................................................................................................... 3

*Goldman v. Simon Prop. Grp., Inc.*,
  869 N.Y.S.2d 125 (N.Y. App. Div. 2008) .............................................................................. 10

*Goldstein v. SEC*,
  451 F.3d 873 (D.C. Cir. 2006) ................................................................................................. 5

*In re Bentzion S. Turin v. Amtrust Fin. Servs., Inc., et al.*,
  ARB Case No. 11-062, 2013 WL 1497073 (Dep't of Labor Mar. 29, 2013) .......................... 6

*In re John Hughart v. Raymond James & Assocs., Inc*,
  2004 SOX 9, 2004 WL 5308719 (Dep't of Labor Dec. 17, 2004) ........................................... 6

*Jones v. Mercedes Benz Manhattan, Inc.*,
  No. 19-cv-00472, 2020 WL 1445728 (S.D.N.Y. March 25, 2020) .......................................... 7

*Knudsen v. Quebecor Printing (U.S.A.) Inc.*,
  792 F. Supp. 234 (S.D.N.Y. 1992) ......................................................................................... 10

*Lobosco v. New York Tel. Co./NYNEX*,
  96 N.Y.2d 312 (N.Y. 2001) .................................................................................................... 10

*Narvarte v. Chase Manhattan Bank*,
   No. 96-cv-8133, 1998 WL 690059 (S.D.N.Y. Oct. 2, 1998) ...................................................9

*Narvarte v. Chase Manhattan Bank*,
   No. 96-cv-8133, 2000 WL 547031 (S.D.N.Y. May 4, 2000) ..................................................9

*Nielsen v. AECOM Tech. Co.*,
   762 F.3d 214 (2d Cir. 2014) ....................................................................................................4

*Nunez v. Mitchell*,
   No. 17-cv-9734, 2018 WL 4301370 (S.D.N.Y. Sept. 10, 2018) ..............................................3

*Roelcke v. Zip Aviation, LCC*,
   No. 15-cv-6284, 2018 WL 1792374 (S.D.N.Y. Mar. 26, 2018) ............................................10

*Rose v. Rahfco Mgmt. Grp., LLC*,
   No. 13-cv-5804, 2014 WL 7389900 (S.D.N.Y. Dec. 15, 2014) ..............................................5

*Sabetay v. Sterling Drug, Inc.*,
   69 N.Y.2d 329 (N.Y. 1987) .....................................................................................................8

*SEC v. Capital Gains Research Bureau, Inc.*,
   375 U.S. 180 (1963) .................................................................................................................5

*SEC v. Moran*,
   944 F. Supp. 286 (S.D.N.Y. 1996) ...........................................................................................5

*SEC v. Tambone*,
   550 F.3d 106 (1st Cir. 2008), *reh'g en banc granted, opinion withdrawn*, 573
   F.3d 54 (1st Cir. 2009), *and opinion reinstated in part on reh'g*, 597 F.3d 436
   (1st Cir. 2010) ..........................................................................................................................5

*Verfuerth v. Orion Energy Sys., Inc.*,
   879 F.3d 789 (7th Cir. 2018) ...................................................................................................5

*Wiggins v. ING U.S., Inc.*,
   No. 14-cv-01089, 2015 WL 8779559 (D. Conn. Dec. 15, 2015) ............................................6

**STATUTES**

12 Del. C. § 3806(1) (2018) .............................................................................................................5

15 U.S.C. § 80a-35(a) ......................................................................................................................5

15 U.S.C. § 80b-6 ............................................................................................................................5

**OTHER AUTHORITIES**

17 C.F.R. § 275.206(4)-8..................................................................................................................4

I.      **INTRODUCTION**

Defendants demonstrated in their previous brief that Mr. Yang's alleged protected activity raised purely contractual issues.  Specifically, Mr. Yang claims to have protested Alcentra NY's planned resignation from its sub-advisory relationship with the Stira Fund, suggesting that an early withdrawal would have breached fiduciary obligations to a client.[1]  But his purported protests did not implicate any of the laws or rules enumerated in Section 806 of SOX, and he was certainly not a whistleblower who had engaged in protected activity.

In response, Mr. Yang does not contend that his complaint about the timing of the planned withdrawal was protected by SOX.  Rather, he spins out a new and more fanciful yarn.  Mr. Yang now says that he told his employer that if Alcentra NY had resigned as planned, it would have made the Stira Fund's prospectus inaccurate.  The potential impact on the accuracy of the Fund's prospectus, he now says, would have resulted in a breach of fiduciary duties to the Fund, and that is what he claims to have been protesting to his employer.

This new factual assertion and corresponding legal theory is unavailing.  There was no fiduciary duty that prevented Alcentra NY from resigning as a sub-adviser to the Stira Fund.  On the contrary, its fiduciary duty prevented Alcentra NY from defrauding or deceiving the Fund.  There is no allegation of fraud or deceit here, nor could Mr. Yang muster such an assertion, and the reason is quite simple.  Mr. Yang was not only an employee of Alcentra NY, but also a member of the Board of Trustees of the Stira Fund.  Whatever knowledge he acquired as an Alcentra NY employee, he carried with him in his role as a Trustee of the Stira Fund.  In fact, as soon as he learned of the planned resignation, he advised the President of the Stira Fund of the same.  Thus, as Mr. Yang must concede, there was no fraud or deception perpetrated on the

---

[1]     All capitalized terms used herein shall have the same meaning ascribed to them in Defendants' Opening Brief.

Fund, and any protests by Mr. Yang about the timing of the resignation did not implicate Alcentra NY's fiduciary duties to the Fund.

Finally, Mr. Yang concedes that his breach of contract claims are derivative of his SOX claim. In essence, he argues that the Court should disregard the plain terms of the underlying documents, and find that he is entitled to recover certain unvested incentive awards if it finds that Defendants violated SOX by terminating his employment. Ultimately, there is no authority to convert this SOX claim into a breach of contract or quasi-contract claim and, even if there were, his contract and quasi-contract claims fail for the same reasons that his SOX claim fails.

Thus, Defendants respectfully request that the Court grant its Motion and dismiss Mr. Yang's First Amended Complaint ("FAC") with prejudice.

## II.     ARGUMENT

### A.     Plaintiff's Opposition Confirms That The FAC Contains No Factual Allegations Plausibly Showing That He Engaged In Protected Activity Under SOX.

Mr. Yang seems to concede that in protesting Alcentra NY's planned early withdrawal from a sub-advisory role with the Stira Fund, he was not reporting a violation of one of the laws enumerated in Section 806 of SOX or an SEC rule or regulation. This failure alone is fatal to his SOX claim, as the only *conduct* Mr. Yang reported to Defendants was Alcentra NY's planned withdrawal as sub-adviser to the Stira Fund. Defs.' Mem. of Law in Supp. Motion to Dismiss (Dkt. No. 27-1) ("Defs. Br.") at 14.

In an attempt to salvage a viable claim, however, Mr. Yang makes a new factual assertion in his Opposition brief. He now contends that he reported to Defendants that the planned withdrawal as a sub-adviser to the Stira Fund would have caused the Stira Fund's prospectus to be inaccurate. He argues that Alcentra NY's immediate resignation "would breach Alcentra NY's explicit representations in the Stira Fund prospectus that it would make investment

decisions for the Stira Fund, execute on its trading strategies, keep the Stira Adviser updated with financial progress, and attend regular meetings." Pl.'s Opp'n to Motion to Dismiss (Dkt. No. 29) ("Pl. Br.") at 14 (citing FAC ¶ 77); *see also* Pl. Br. at 10-11 (contending that he informed BNY Mellon's Counsel about the "prohibition against an investment adviser making materially misleading statements or omissions about its investment strategy" and falsely claiming this is alleged at FAC ¶¶ 6-7, 68-74, 76-80). Mr. Yang does not state explicitly in the FAC that he complained about the impact of a resignation on the Stira Fund prospectus, and that warrants the rejection of his newly articulated theory.² But even if he had pleaded his new contention more directly, this pivot in his approach would not save his SOX retaliation claim.

As Mr. Yang notes, the prospectus was issued by the Stira Fund, not by Alcentra NY. FAC ¶¶ 71-74. The prospectus identified Alcentra NY as a sub-adviser, and Mr. Yang suggests that the representation would have become inaccurate had Alcentra NY resigned from that role. FAC ¶¶ 72-73. Surely, Mr. Yang is not suggesting that the identification of Alcentra NY in the Stira Fund's prospectus obligated Alcentra NY to remain in its sub-adviser role in perpetuity. Mr. Yang does not cite any cases or legal authority for such an absurd proposition, and he is undoubtedly aware that advisers – particularly sub-advisers – to investment funds resign or are replaced quite often.

The question, therefore, is what legal duty did Alcentra NY have to the Stira Fund's investors? Mr. Yang supplies the answer in his Opposition brief. He relies on Rule 206(4)-8 under the Investment Advisers Act of 1940, which imposes two separate regulatory obligations on an investment adviser with respect to the investors in such investment adviser's funds. First,

---

² *See, e.g.*, *Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal quotations and citation omitted); *Nunez v. Mitchell*, No. 17-cv-9734, 2018 WL 4301370 at *4, n. 1 (S.D.N.Y. Sept. 10, 2018) ("To the extent Plaintiff makes new factual allegations in his opposition brief, the Court does not consider them.") (Nathan, J.).

a fund's investment adviser cannot make any materially untrue or incomplete statements "to any investor or prospective investor." 17 C.F.R. § 275.206(4)-8(a)(1). Second, a fund's investment adviser cannot "[o]therwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the [fund]." 17 C.F.R. § 275.206(4)-8(a)(2).

In other words, Mr. Yang argues that an investment adviser (such as Alcentra NY) may not deceive or defraud fund investors, just as it cannot deceive the fund itself. This is where Mr. Yang's case collapses completely. There was no fraud or deception by Alcentra NY, nor could there have been given Mr. Yang's dual capacity. Mr. Yang was both an employee of Alcentra NY and a Trustee of the Stira Fund. As soon as he learned of the planned resignation, the Stira Fund was also on notice based on the knowledge of its Board member. And if that were not enough, Mr. Yang contends that the day after he learned of the intended resignation, he informed the Stira Fund's President of Alcentra NY's planned withdrawal. *See* FAC ¶ 67.

Once the Stira Fund learned of the planned resignation of its sub-adviser, any duty to communicate that development to investors or to amend the prospectus was the responsibility of the Fund, rather than Alcentra NY.[3] Mr. Yang admits that it was the Stira Fund, not Alcentra NY, that was responsible for updating the Fund's prospectus. *See* FAC ¶ 39. After he (as a Board member) and the President of the Fund knew of the planned resignation of Alcentra NY, it was incumbent on them to fulfill their fiduciary duties to the Fund and its investors. *See* 15

---

[3]  Mr. Yang fails to identify any authority suggesting that a *potential* sub-advisory resignation would be material to the Fund's investors, let alone warrant disclosure, before the sub-adviser *actually* resigned. *See, e.g.*, *Nielsen v. AECOM Tech. Co.*, 762 F.3d 214, 218 (2d Cir. 2014) (affirming dismissal of SOX whistleblower complaint because "well-pled facts do not permit the court to infer more than the mere possibility of misconduct"); *Diaz v. Transatlantic Reinsurance Co.*, 16-cv-1355, 2016 WL 3568071, at *5 (S.D.N.Y. June 21, 2016) (granting motion to dismiss SOX whistleblower complaint because it failed plausibly to allege either reported conduct involving false or fraudulent information provided to shareholders or conduct with intent to deceive shareholders).

U.S.C. § 80a-35(a); 12 Del. C. § 3806(1) (2018)); Defs. Br. at 16.  To lay the prospectus issue at the feet of Alcentra NY is an utter fiction that is belied factually by the FAC itself.

Mr. Yang also misstates the law in an attempt to save his SOX claim from dismissal.  Mr. Yang claims that *Goldstein v. S.E.C.*, 451 F.3d 873 (D.C. Cir. 2006), in which the D.C. Circuit held that an investment adviser owes fiduciary duties only to the fund (because the fund is the adviser's client) and not to the fund's investors (who are not clients of the adviser), is no longer good law.[4]  Pl. Br. at 12 n. 4.  Not so.  *See, e.g.*, *Rose v. Rahfco Mgmt. Grp., LLC*, No. 13-cv-5804, 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (citing *Goldstein*, 451 F.3d at 881, and quoting that "[i]t simply cannot be the case that investment advisers are the servants of two masters.").  The simple truth is that although Alcentra NY was precluded under Rule 206(4)-8 from misleading investors, its ability to resign from its role as a sub-adviser was not constrained by any affirmative duty to those investors.

Mr. Yang fails to address any of these issues, including the significance of his role as Trustee of the Stira Fund, which alone is fatal to his attempt to construct a retaliation claim based on a theory of deception or fraud.  *See, e.g.*, *Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789 (7th Cir. 2018) (finding that Plaintiff overlooked the fact that he as CEO "bore ultimate responsibility for disclosing material information to the SEC" and explaining that SOX "does not

---

[4] The remaining cases cited by Plaintiff are inapposite; none provide any support for a claim that Alcentra NY owed a duty to the Fund's investors.  *See* Pl. Br. at 11 (citing *SEC v. Tambone*, 550 F.3d 106, 110 (1st Cir. 2008), *reh'g en banc granted, opinion withdrawn*, 573 F.3d 54 (1st Cir. 2009), *and opinion reinstated in part on reh'g*, 597 F.3d 436 (1st Cir. 2010) (holding that two executives of an underwriter of mutual funds were responsible as primary violators of federal securities laws and aiders and abettors of uncharged violations of the company) and *SEC v. Moran*, 944 F. Supp. 286, 289 (S.D.N.Y. 1996) (addressing insider trading claims against defendants, i.e. an individual and his companies (an asset management company and securities brokerage firm)).  The Court in *Goldstein* addressed the Supreme Court's decision in *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), explaining that *Capital Gains* held that 15 U.S.C. § 80b-6 created a fiduciary duty of loyalty between an adviser and his client.  *See* 451 F.3d at 881.

prohibit a company from firing an employee who confesses *his own* fraudulent conduct" (emphasis in original)).[5]

Perhaps this would have been a different case if Alcentra NY had told Mr. Yang he could not inform the Stira Fund of Alcentra NY's planned early withdrawal. But that is not what Mr. Yang has alleged. Mr. Yang offers no explanation, beyond the application of a conclusory label to his legal theory, as to how Alcentra NY breached a fiduciary duty by deciding to stop being a sub-adviser to the Stira Fund when it fully disclosed this intent to the Stira Fund (through its Trustee, Mr. Yang, and to the President of the Fund).

Finally, Mr. Yang attacks straw men in an attempt to obfuscate the issues. For example, Defendants never suggested that a whistleblower needs to "cite a code section" or "specific statutes and regulations" when providing information to his employer. *See* Pl. Br. at 14-15. Rather, Defendants demonstrated that Mr. Yang's unreported beliefs are immaterial because an employer can only retaliate based on reported information. Similarly, Defendants did not suggest that Mr. Yang's complaint should be dismissed because the "imminent violation did not ripen into an actual violation." *See* Pl. Br. at 15. Rather, Defendants demonstrated that the conduct Mr. Yang actually reported (the timing of when Alcentra NY could resign as sub-adviser) was not a violation (imminent or ripened) of any law or rule enumerated in Section 806, a point Mr. Yang does not dispute, and therefore, cannot support a SOX claim.

---

[5] Mr. Yang's dual role makes his purported SOX claim fatally flawed and easily distinguishable from the cases he cites. *See, e.g.*, *Wiggins v. ING U.S., Inc.*, No. 14-cv-01089, 2015 WL 8779559,*6 (D. Conn. Dec. 15, 2015) (Plaintiff raised concerns regarding inaccuracies about defendant's market value assessments.); *In re Bentzion S. Turin v. Amtrust Fin. Servs., Inc., et al.*, ARB Case No. 11-062, 2013 WL 1497073, *2 (Dep't of Labor Mar. 29, 2013) (Complainant raised concerns regarding company's CEO's fiduciary duties to shareholders during acquisition.); *In re John Hughart v. Raymond James & Assocs., Inc*, 2004 WL 5308719, *16 (Dep't of Labor Dec. 17, 2004) (Complainant raised concerns regarding company's fiduciary duty to its clients to aggressively seek recovery of improperly withheld taxes.).

### B. Plaintiff's Breach Of Contract Claims Fail As A Matter Of Law.

### 1. Mr. Yang Cannot Sustain His "Breach of the Offer Letter" Claim.

Alcentra NY demonstrated that Mr. Yang's offer letter, as a matter of law, provides no basis for recovery of his LTIP awards because he was an at will employee and his LTIP awards are governed by separate plan documents. Defs. Br. at 18-19.

Mr. Yang relies on *Jones v. Mercedes Benz Manhattan, Inc.*, No. 19-cv-00472, 2020 WL 1445728, at *3-4 (S.D.N.Y. March 25, 2020) to argue that "*unless* an offer letter unambiguously disclaims that it is a contract, courts may consider it an employment contract." Pl. Br. at 20 (emphasis in original). But the offer letter in *Jones* is distinguishable. 2020 WL 1445728, at *3-4 (concluding that language stating the letter was not "intended to create a contract of continued employment, or bind [plaintiff] to a specific period of employment" was an insufficient disclaimer). Mr. Yang's offer letter states, "your employment with BNY Mellon . . . will remain *at all times* 'at will', and the employment relationship *may be terminated at any time with or without cause*." *See* Dkt. 27-11 at 6 (emphases added).

Even if the offer letter could support a breach of contract claim, Mr. Yang still fails to identify any specific provision that Alcentra NY breached. Instead, Mr. Yang "alleges that Defendants have breached provisions in the Offer Letter regarding compensation, including the provisions that refer[] to the company's incentive plan." Pl. Br. at 21 (citing AC ¶¶ 176-87). The cited portion of the offer letter provides that Mr. Yang's "compensation will be comprised of a base salary and an annual bonus award *opportunity*, of which a portion will be awarded as long-term incentive." FAC ¶ 180 (emphasis added). Alcentra NY met this obligation. Defs. Br. at 19. Mr. Yang ignores the fact that the offer letter expressly states that the incentive awards shall be governed by the terms of the incentive plan.

Mr. Yang now seeks to bring an additional distinct breach of contract claim based solely on the Code of Conduct despite failing to include such a claim in the FAC. The Court should reject this attempt to amend his pleading. *See, e.g.*, *Cooper v. Slice Techs., Inc.*, No. 17-cv-7102, 2018 WL 2727888, at *5 n. 3 (S.D.N.Y. June 6, 2018) ("The Court will not consider [a] cause of action raised for the first time in opposition to the motion to dismiss."); *see also Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC*, No. 08-09101, 2009 WL 5179535, at *14 (S.D.N.Y. Dec. 29, 2009) (dismissing counterclaim where parties attempted to change its nature in their opposition to a motion to dismiss).

Even if properly pleaded, Mr. Yang cannot sustain a breach of contract claim based on the Code of Conduct. This is a "difficult pleading burden," *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333 (N.Y. 1987), and "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *See Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 317 (N.Y. 2001); *see also De Petris v. Union Settlement Ass'n, Inc.*, 86 N.Y.2d 406, 410 (N.Y. 1995) ("Mere existence of a written policy, without the additional elements . . ., does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer.").

Fatal to Mr. Yang's attempted claim is his arbitrary distinction between the language in the Code of Conduct, which states that it "does not alter the terms and conditions of your employment," and the "magic" language he argues is required to preclude a policy from becoming a contract, i.e. "this is not a contract of employment." *See* Pl. Br. at 20 & n. 7. Mr. Yang cites no authority suggesting that this language is materially different or that such magic language is required to preclude a policy from becoming a contract. *See id.* (citing *Diaz*, 2016

WL 3568071 at *6 (finding provision in Code of Conduct stating that it is "not a contract of employment" fatal to the claim, but not stating that this exact language is required)).[6]

### 2. Plaintiff's Claims for Breach of Long-Term Incentive Plans Fail as a Matter of Law.

Defendants established that Mr. Yang's claims for unvested awards under the LTI Plans failed because: (1) the plan documents expressly provide that they are not contracts, (2) the plan documents grant Alcentra NY exclusive discretion to pay LTIP awards, and (3) these claims are entirely derivative of his SOX claim.  Defs. Br. at 19-24.  Mr. Yang does not address the first two points, and concedes the third.  Pl. Br. at 21-22.

He also purports to refute arguments Defendants have not made.  For example, Defendants did not argue that courts can never review incentive awards.  Pl. Br. at 22.  Rather the case law is clear that entitlement to an incentive award is governed by the documents at issue.  Defs. Br. at 20-24.  Here, the LTI Plan and LTI Cash Plan are entirely discretionary; thus, Mr. Yang cannot sustain his claims.  Ultimately, Mr. Yang asks the Court to ignore the language of the Plans and applicable case law because he has a "legitimate retaliation claim," but the presence of a SOX claim cannot turn routine policies and discretionary incentive plans into contracts.  *Ashmore v. CGI Grp. Inc.*, No. 11-cv-8611, 2012 WL 2148899, at *8 (S.D.N.Y. June 12, 2012), cited by Mr. Yang, supports this conclusion.  *See* Pl. Br. at 24.[7]  In *Ashmore*, the Court

---

[6] The remaining cases relied on by Mr. Yang are inapposite.  *See* Pl. Br. at 18.  In *Narvarte v. Chase Manhattan Bank*, No. 96-cv-8133, 1998 WL 690059, at *1 (S.D.N.Y. Oct. 2, 1998), the Court permitted a *pro se* plaintiff then represented by counsel to amend her *pro se* complaint to bring a breach of contract claim without any reference to the pertinent language in the manual.  Indeed, the Court later dismissed the count based in part on its finding that the statement "[p]rohibit any retaliatory action against an employee who has made a good faith internal report of a suspected violation of any law" was not sufficient to create a contract.  *See Narvarte*, 2000 WL 547031 at *12.

[7] It is unclear why Mr. Yang cites *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310 (S.D.N.Y. 2006), where the Court permits a plaintiff to bring a breach of contract claim and a SOX retaliation claim.  The opinion provides no information on the alleged breach of contract claim.  Defendants do not argue that a plaintiff can never allege facts sufficient to support a breach of contract claim and SOX retaliation claim.  However, Mr. Yang has not done so and certainly not with respect to the LTI Plan and LTI Cash Plan.

explains, "if the decision to award [plaintiff] a bonus was subject to the absolute discretion of his employer, [plaintiff] could not maintain a breach of contract claim under New York law." 2012 WL 2148899 at *8. The court found that the program at issue did not contain "magic words" such as "at the discretion of management," *id.* at *9, yet the Plans here award "sole" or "complete" discretion and authority. *See* Defs. Br. at 23.

### C. Plaintiff's Quasi-Contract Claims Also Fail.

Mr. Yang concedes that his quasi-contract claims are derivative of his SOX claim. *See* Pl. Br. at 24-25. Mr. Yang argues that the Court should nonetheless permit his quasi-contract claims to proceed because Defendants have argued that the facts alleged cannot sustain breach of contract claims. Mr. Yang fails to cite any authority for the proposition that he should be permitted to maintain quasi-contract claims where incentive plans govern the monies sought and grant sole discretion to the company in granting or withholding those unvested funds. The case law Mr. Yang cites does not hold that a quasi-contract claim premised on entirely discretionary unvested incentive awards may proceed. *See, e.g.*, *Roelcke v. Zip Aviation, LCC*, No. 15-cv-6284, 2018 WL 1792374, at *10 (S.D.N.Y. Mar. 26, 2018) (permitting breach of contract and quasi-contract claims where plaintiff alleges a series of breaches based on failure to pay wages over many years involving a series of contracts); *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (permitting a plaintiff to bring breach of contract and quasi-contract claims when it was unclear whether a compensation plan governed the unpaid sales commissions at issue); *Goldman v. Simon Prop. Grp., Inc.*, 869 N.Y.S.2d 125, 128 (N.Y. App. Div. 2008) (class action challenging the imposition of a dormancy fee on gift cards).

### III. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Mr. Yang's First Amended Complaint in its entirety with prejudice.

Dated:  August 17, 2020                                     Respectfully submitted,

/s/ Michael L. Banks
Michael L. Banks
W. John Lee
Shannon L.C. Ammon
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Tel.: (215) 963-5210
Fax: (215) 963-5001
Michael.Banks@morganlewis.com
W.John.Lee@morganlewis.com
Shannon.Ammon@morganlewis.com

*Attorneys for Defendants The Bank of New York Mellon Corporation, Alcentra NY, LLC, and Alcentra Limited*

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on August 17, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Shannon L.C. Ammon*
Shannon L.C. Ammon
