UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/21
```

---

Yang,

                    Plaintiff

          —v—

The Bank of New York Mellon Corporation, *et al.*,

                    Defendants.

---

20-cv-3179 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings claims against former employer for retaliation in violation of the Sarbanes-Oxley Act § 1514A, breach of contract, quantum meruit and unjust enrichment. Defendants move to dismiss for failure to state a claim. For the reasons stated below, that motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint. Dkt. No. 26. These facts are assumed to be true for purposes of evaluating the motion to dismiss.

Plaintiff John ("Jack") Yang is a senior executive in the banking industry who was hired by Defendants in March 2013. Dkt. No. 26 ¶ 1, 3. Defendant BNY Mellon is a publicly-traded global financial services company. *Id.* ¶ 2. Plaintiff was hired to work as Managing Director and Head of Business Development for Defendant Alcentra NY, a registered investment adviser under the Investment Advisers Act of 1940 with the SEC. *Id.* ¶ 2. Alcentra NY is a subsidiary of BNY Alcentra Group Holdings, Inc., a sub-investment grade credit asset manager owned by Defendant BNY Mellon. *Id.*

Upon Plaintiff's hiring by Alcentra NY and BNY Mellon, Plaintiff's offer letter of employment stated that Plaintiff would be subject to the Alcentra Long-Term Incentive Plan and Long-Term Incentive Cash Award Plan, which detailed certain awards that Plaintiff would be able to receive as part of his employment. *Id.* ¶ 44. As an employee of BNY Mellon, Plaintiff was also given the BNY Mellon Code of Conduct and was made aware of its contents, which included a provision encouraging employees to report misconduct. *Id.* ¶ 86.[1]

Plaintiff's role at BNY Mellon was to attract and secure investors to increase "assets under management." *Id.* ¶ 3. Plaintiff was successful in this role and was promoted accordingly. In April 2014, Plaintiff was promoted to Global Head of Business Development for Alcentra.[2] *Id.* ¶ 3. In January 2016, Plaintiff was again promoted, this time to Head of Americas for Defendant Alcentra NY. *Id.* ¶ 3. During his tenure, the assets under management grew from approximately $15 billion to $40 billion. *Id.* ¶ 3. Plaintiff's direct supervisor was Mr. Forbes-Nixon, CEO of Alcentra. *Id.* ¶ 4, 53.

In 2017, Alcentra NY entered into an investment subadvisory agreement with the Stira Alcentra Global Credit Fund ("Stira Fund"), an investment company. *Id.* ¶ 4, 31. Alcentra NY was to act as the fund's subadvisor, which meant it was responsible for managing the investment portfolio, including making investment decisions and executing on trading strategies and keeping the fund informed about the status of the market and the fund's portfolio. *Id.* ¶ 4, 31. The

---

[1] Though Plaintiff did not attach these documents to his complaint, the Court considers Plaintiff's Offer Letter for employment, the BNY Mellon Code of Conduct, and Plaintiff's Long Term Incentive Plan and Long-Term Cash Award Plan in ruling on Defendants' motion. See Dkt. No. 27-7, 8, 11, 12. "[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference" so long as "a plaintiff[] reli[ed] on the terms and effect of a document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Plaintiff relied heavily on these documents in making his claims and quoted and referenced them throughout. (Plaintiff also provided a hyperlink to the BNY Mellon Code of Conduct in his complaint).

[2] In his Amended Complaint, Plaintiff appears to refer to named defendants "Alcentra Limited" and "Alcentra NY" collectively as "Alcentra." *See* Dkt. No. 26 at 1.

partnership and Alcentra NY's investment strategy for managing the Stira Fund were detailed in the fund's prospectus that was filed with the SEC. *Id.* ¶ 6, 33. Specifically, the prospectus stated that "[t]he management of the Fund's investment portfolio is the responsibility of the Sub-Adviser," and that the subadvisor will "make investment decisions for the Fund and execute on its trading strategies." *Id.* ¶ 34. In addition to his role within Alcentra, Plaintiff was named to the Board of Trustees for the Stira Fund and was listed as a trustee in the offering materials. *Id.* ¶ 54.

The decision to act as subadvisor to the Stira Fund was criticized by some at BNY Mellon because BNY Mellon management ordinarily prefers partnerships with BNY Mellon affiliates. *Id.* ¶ 4. Moreover, after the launch of the partnership, the Stira Fund achieved only modest growth in 2017. *Id.* By mid-2018, some members of senior management at Alcentra and BNY Mellon, in particular Alcentra CEO Mr. Forbes-Nixon and CFO Mr. Rajguru, had soured on the Stira Fund partnership. *Id.* ¶ 4, 5.

On August 21, 2018, the Alcentra management committee held a meeting regarding the Stira Fund in advance of the fund's quarterly Board meeting, which was to be held two days later on August 23, 2018. *Id.* ¶ 5, 57. The management committee consisted solely of Plaintiff, Mr. Forbes-Nixon and Mr. Rajguru. *Id.* ¶ 5. At this meeting, Mr. Forbes-Nixon stated that Alcentra NY should resign as subadvisor to the Stira Fund as soon as possible, as BNY Mellon management were displeased with the partnership. *Id.* ¶ 5, 58. Mr. Rajguru then responded that Alcentra NY could not immediately resign from the fund because it was obligated to give at least ninety-days' notice pursuant to the terms of the subadvisor agreement. *Id.* ¶ 5. (According to Plaintiff, this was an incorrect statement, as the prospectus only provided that the Stira Fund had the option to terminate following a sixty-day notice period, and in fact did not provide for

unilateral termination at all within the first 24 months of the partnership at all.  *Id.* ¶ 5, 62-63).

Plaintiff believed that, because of the tone of the meeting and the content of the discussions, Mr.

Forbes-Nixon and Mr. Rajguru had already determined that the relationship with the Stira Fund

must end immediately and were unwilling to tolerate any opposition.  *Id.* ¶ 64.

 After the meeting, Mr. Forbes-Nixon told Mr. Rajguru to direct the employees at

Alcentra NY to immediately stop acting as subadvisor to the Stira Fund and cease making

investments, attending meetings, and providing updates.  *Id.* ¶ 5, 66.  Mr. Rajguru did so in an

email.  *Id.* ¶ 66.  This meant that Alcentra NY would not participate in the Stira Fund's Board

meeting, which was scheduled for two days later on August 23, 2018, at which they were

supposed to provide market and portfolio updates.  *Id.* ¶ 5, 66.

Plaintiff was very concerned about this directive issued by Mr. Forbes-Nixon and Mr.

Rajguru to cease acting as subadvisor.  According to Plaintiff's complaint, Plaintiff believed the

directive might violate the securities laws in three ways:  (1) it would be a violation of Alcentra

NY's fiduciary duties to the Stira Fund and its investors as required under the Section 206,

Investment Advisors Act of 1940, (2) it would be a violation of SEC Rule 206(4)-8 because it

would render statements made in the prospectus and to the Stira Fund's investors regarding the

fund's investment strategy and Alcentra NY's role materially misleading, and (3) it would

violate Section 77 of the Securities and Exchange Act, which requires the Stira Fund to amend or

supplement a prospectus to reflect material post-effective developments, which would subject

Alcentra to regulatory penalties under 15 U.S.C. § 80b-3(e).  Dkt. No. 26 ¶ 68.  Adding to his

concern, Plaintiff was worried that because Mr. Forbes-Nixon and Mr. Rajguru spent most of

their careers based in London, they were not familiar with U.S. Securities laws and thus might

not be aware of the legal ramifications of the directive.  *Id.* ¶ 82.

Plaintiff decided to act on these concerns.  On or about August 21 or 22, 2018, Plaintiff had conversations with both the President of the Stira Fund and with BNY Mellon's counsel for the Stira Fund.  *Id.* ¶ 76.  In his conversation with the Stira Fund President, Plaintiff informed the fund president of the Alcentra management committee's planned directive.  The Stira Fund President told Plaintiff that the directive would violate the terms of the subadvisor agreement and contradict representations made in the Stira Fund's prospectus.  *Id.*

During his conversation with BNY Mellon's counsel for the Stira Fund, Plaintiff informed counsel about the directive and provided the email that Mr. Rajguru had sent relaying the directive.  *Id.* ¶ 76, 84.  Plaintiff further told the counsel that, if followed by Alcentra NY, this directive would (1) breach its fiduciary duties to as an investment adviser under the 1940 Act to provide advise, monitor, and act in the best interests of the Stira Fund, (2) breach Alcentra NY's explicit representations in the Stira Fund prospectus that it would make investment decisions, execute trading strategies, attend regular meetings, and provide regular updates for the Stira Fund, (3) subject Alcentra NY and BNY Mellon to liability by shareholders and to regulatory penalties, based on Alcentra NY's planned misrepresentations to investors in the Stira Fund and because investors relied on representations contained in the Fund's prospectus.  *Id.* ¶ 77-81.

Plaintiff then requested that someone be authorized to participate in the upcoming Stira Fund quarterly board meeting and prepare the required reports, that Mr. Forbes-Nixon and Mr. Rajguru be counseled on their fiduciary obligations as an investment advisor to the Stira Fund, and that they receive guidance and training on U.S. compliance and legal issues for fund management generally.  *Id.* ¶ 83.  Following Plaintiff's report to BNY Mellon counsel, the counsel contacted Mr. Rajguru and advised him that even if Alcentra NY were to give proper

notice of termination, it was still responsible for carrying out its duties as subadvisor through the termination date, which would be no sooner than Summer 2019. *Id.* ¶ 18.

After Plaintiff told BNY Mellon counsel about the alleged directive, Plaintiff alleges that he became a victim of a retaliation effort led by Mr. Forbes-Nixon. *Id.* ¶ 101. Plaintiff alleges Mr. Forbes-Nixon and Mr. Rajguru were embarrassed and angry that Plaintiff had protested their planned course of action. *Id.* ¶ 100. Mr. Forbes-Nixon, Plaintiff's immediate supervisor, became very hostile towards Plaintiff. This included berating him in front of colleagues, lobbing disproportionate or unwarranted criticisms for minor offenses, and refusing to engage with Plaintiff on work matters. *Id.* ¶ 101-104. Mr. Forbes-Nixon and Mr. Rajguru also shut Plaintiff out of all discussions and decision-making related to the Stira Fund. *Id.* ¶ 105.

The retaliatory treatment continued to escalate when Mr. Forbes-Nixon gave Plaintiff an unfavorable year-end performance review for 2018 despite the fact that Plaintiff had met or exceeded his fundraising and corporate goals for Alcentra and that Plaintiff had consistently received strong performance reviews throughout his tenure at BNY Mellon, as well as praise from Mr. Forbes-Nixon specifically in the months prior to the whistleblower complaint. *Id.* ¶ 107, 109. The purported basis for the low rating was that Plaintiff allegedly violated BNY Mellon's email policy. *Id.* ¶ 107. According to Plaintiff, any such infractions were minor and inconsequential, and were simply used as pretext to retaliate against Plaintiff for his whistleblower complaint. *Id.* ¶ 107. Next, Defendants lowered his compensation, slashing his incentive compensation by 80%. *Id.* ¶ 113. Eventually, Defendants terminated Plaintiff on the pretextual basis of the email violations and poor performance reviews in January 2019. *Id.* ¶ 16, 113. Defendants also withheld awards pursuant to Plaintiff's incentive and deferred compensation plans which have since vested and are worth millions of dollars. *Id.* ¶ 16.

### B.  Procedural Background

On April 22, 2020, Plaintiff filed a complaint against Defendants in this Court.  Dkt. No.

1.  After Defendants filed a motion to dismiss, Plaintiff filed an amended complaint pursuant to

the Undersigned's Individual Rules in Civil Cases Rule 3F.  Dkt. No. 21.  In Plaintiff's First

Amended Complaint, the operative complaint in this action, Plaintiff brings claims against

Defendants for retaliating against him for his whistleblower complaint in violation of § 1514A of

Sarbanes-Oxley, for breach of contract for Defendants' decisions to unlawfully terminate him

and deny incentive compensation, and for quantum meruit and unjust enrichment.  Dkt. No. 26.

Defendants filed a motion to dismiss the First Amended Complaint on July 27, 2020 and the

motion is fully briefed.  Dkt. No. 27, 29, 31.

## II.    DISCUSSION

Defendants move to dismiss Plaintiff's complaint for failure to state a claim under

Federal Rules of Civil Procedure Rule 12(b)(6).  In order "[t]o survive a motion to dismiss under

Fed. R. Civ.P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible

claim for relief." *Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013) (*Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

For the reasons explained below, Defendants' motion is granted as to Plaintiff's claims

for breach of contract.  The motion is otherwise denied, as Plaintiff has stated a claim for

retaliation under § 1514A of the Sarbanes-Oxley Act of 2002 and has plausibly alleged quasi-

contract claims.

### A.  Sarbanes-Oxley Act Whistleblower Claims

The Sarbanes Oxley Act of 2002 contains a whistleblower provision which, as relevant

here, provides that a publicly traded company or its subsidiaries may not "discharge, demote,

suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because . . . the employee . . . provide[s] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of . . . [certain federal laws,] [including] any rule or regulation of the Securities and Exchange Commission . . . or any provision of Federal law relating to fraud against shareholders . . . [to] a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1). To establish a prima facie claim for retaliation under this provision, an employee must show that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Rev. Bd., U.S. Dep't of Lab*., 710 F.3d 443, 447 (2d Cir. 2013).[3]

In their motion to dismiss, Defendants only challenge to Plaintiff's whistleblower claim is that Plaintiff did not "engage[] in protected activity" under § 1514A. *Id*. "Protected activity" under § 1415A(a)(1) includes when a whistleblowing employee provides information "regarding any conduct which the employee reasonably believes constitutes a violation of the enumerated federal provisions" in § 1514A. *Nielsen v. AECOM Tech. Corp*., 762 F.3d 214, 221 (2d Cir. 2014). Defendants argue that Plaintiff has not plausibly alleged (1) that he reported his beliefs to the counsel or (2) that his beliefs were reasonable. The Court disagrees. Accepting Plaintiff's factual allegations as true, it is plausibly alleged that the whistleblower complaint made to BNY Mellon counsel was "protected activity" under § 1514A.

### 1. Plaintiff plausibly alleges reported conduct that he believed violated securities laws

---

[3] "If the employee proves these four elements, the employer may rebut this *prima facie* case with clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected behavior." *Bechtel*, 710 F.3d at 451 (citing 49 U.S.C. § 42121(b)(2)(B)(iv); 29 C.F.R. § 1980.109(b)).

Plaintiff has alleged that he reported "conduct," in this case the directive from Alcentra NY management to cease acting as subadvisor to the Stira Fund, which he "believe[d] constituted a violation of" one of the enumerated provisions in § 1514A, in this case the Investment Advisors Act of 1940, SEC Rule 206(4)-8, and Section 77 of the Securities and Exchange Act. *Nielsen*, 762 F.3d at 221.   As Defendants do not dispute, these provisions all constitute a "rule or regulation of the Securities and Exchange Commission" and / or a "provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A.

Defendants argue that Plaintiff has nonetheless failed to allege that he engaged in protected activity under § 1514A.  Though Plaintiff specifically referenced the Act of 1940, he did not mention the other provisions to counsel, and thus Defendants aver that "Mr. Yang's unreported beliefs" about the directive violating SEC Rule 206(4)-8 or Section 77 of the SEA "are immaterial because an employer can only retaliate based on reported information."  Dkt. No. 31 at 6.

This argument rests on a misstatement of the law.  First, far from being immaterial, Plaintiff beliefs about Defendants' conduct, when "reasonable," are sufficient to trigger protection under § 1514A, so long as Plaintiff reported Defendants' *conduct.  Nielsen*, 762 F.3d at 221.  Plaintiff did inform counsel of the directive by Alcentra NY management.  And while it is pled that Plaintiff only specifically referenced the 1940 Act and not the SEC Rule or SEA provision in his discussion with counsel, he was not required to provide citations to any specific statutory or regulatory provisions he believed were violated.  The Second Circuit has made clear that an employee's whistleblowing communications do not need to "definitively and specifically relate to one of the listed categories of fraud or securities violations" in § 1514A.  *Nielsen*, 762 F.3d at 219.  While "general inquiries do not constitute protected activity," the plaintiff "is not

required to . . . cite a particular provision that he believes the defendants violated." *Tonra v. Kadmon Holdings, Inc.*, 405 F. Supp. 3d 576, 589 (S.D.N.Y. 2019).

Moreover, as alleged, Plaintiff went beyond simply reporting the conduct and also informed counsel why he believed this conduct violated the law. He specifically alleges that he told counsel that the directive would violate fiduciary duties to the Stira Fund and its investors, and that it would render representations made by Alcentra NY in the prospectus,[4] as well as future representations to be made by Alcentra NY, materially misleading. And, he also generally referenced that he believed Alcentra NY might be subject to "regulatory penalties." Especially considering that "courts in this Circuit have construed the statute broadly to protect any employee of a publicly traded company who takes reasonable actions to protect investors or the markets," *Tonra*, 405 F. Supp. 3d at 590, Plaintiff has plausibly alleged that he reported his beliefs as required under § 1514A.

### 2. Plaintiff's plausibly alleges that his belief was reasonable

The Court must also determine whether the Plaintiff has adequately alleged that his belief was reasonable for his reporting to be "protected activity" under § 1514A. Importantly, § 1514A does not require that Defendants' conduct actually violated of the 1904 Act, Rule 206(4)-8, and Section 77 of the SEA. The "critical focus is on whether the employee reported conduct that he or she reasonably *believes* constituted a violation of federal law." *Nielsen*, 762 F.3d at 221 (emphasis added) (citing *Villanueva v. U.S. Dep't of Labor*, 743 F.3d 103, 109 (5th Cir.2014)). To state a claim under § 1514A, a plaintiff must allege "not only that he believed that the

---

[4] Defendant argues in its Reply brief that "Mr. Yang does not state explicitly in the FAC that he complained about the impact of a resignation on the Stira Fund prospectus." Dkt. No. 31 at 3. That is incorrect. The FAC alleges that: "Mr. Yang also reported that Alcentra NY's proposed course of conduct could subject Alcentra NY and BNY Mellon to liability by shareholders and to regulatory penalties, based on Alcentra NY's planned misrepresentations to investors in the Stira Fund and because investors in the Stira Fund invested in reliance on representations contained in the Stira Fund's *prospectus*." Dkt. No. 26 ¶ 80 (emphasis added).

conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." *Nielsen*, 762 F.3d at 221 (quoting *Livingston v. Wyeth, Inc*., 520 F.3d 344, 352 (4th Cir.2008)).  A plaintiff must provide specific allegations that "support a reasonable belief" that the conduct violated one of the enumerated provisions in § 1514A; allegations that "concern a trivial matter" or have "too tenuous" a connection to the alleged illegality ordinarily will not suffice.  *Id.*  "In assessing the reasonableness of a plaintiff's belief regarding the illegality of the particular conduct at issue, courts look to the basis of the knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Perez v. Progenics Pharm., Inc*., 965 F. Supp. 2d 353, 364 (S.D.N.Y. 2013).

Plaintiff has plausibly alleged that he believed, and that "it was objectively reasonable for him to believe," that "the activity he reported constituted a violation of the laws and regulations listed in § 1514A." *Nielsen*, 762 F.3d at 222.  Though he is not a lawyer, Plaintiff alleges that as a senior executive in the banking industry he was generally aware that (1) Alcentra NY had fiduciary duty to act in the best interests of the Stira Fund and its investors and that (2) Alcentra NY was required not to render any statements in a prospectus or otherwise made to investors misleading.  Plaintiff also alleges he believed that management's decision to pull out of the subadvisory role would be contrary to its explicit representations in the prospectus and to investors that Alcentra NY was serving as subadvisor, and also would not be in the Fund's best interests.  These allegations, accepted as true, "support a reasonable belief" that § 1514A was violated.  *Nielsen*, 762 F.3d at 222.  Far from "trivial," these allegations concern a major decision by Alcentra NY management that directly implicated Alcentra NY's legal duties.  *Id.*  Even if the alleged directive would not actually have violated any of the laws or regulations cited in § 1514A, Plaintiff has still plausibly alleged that it was not unreasonable for someone in his

position to believe it did.  *See Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 343 (S.D.N.Y. 2015), *aff'd*, 923 F.3d 260 (2d Cir. 2019) ("In light of Plaintiff's training and experience, which included working for HUD—but no expertise in mail and wire fraud law—the Court cannot conclude that it was unreasonable, as a matter of law, for Plaintiff to believe that the alleged scheme implicated the mail and wire fraud statutes."). *See also Nielsen*, 762 F.3d at 221 (recognizing that "[m]any employees are unlikely to be trained to recognize legally actionable conduct by their employers.").

Defendants maintain that Plaintiff's belief was nonetheless unreasonable.  Defendants argue that because they told Plaintiff (a board member and trustee for the Fund) about the decision to pull out of the subadvisory role, they effectively provided the Stira Fund with notice of that decision.  And because Plaintiff knew that the Stira Fund was given notice of Defendants' plan to immediately stop acting as subadvisor, Plaintiff should have known that "[t]here was no fraud or deception by Alcentra NY" and therefore should not have believed that the directive was illegal.  Dkt. No. 31 at 4.

The Court rejects Defendants' "notice" argument.  Even assuming *arguendo* Defendants' unsupported claim that telling Plaintiff was sufficient to provide notice to the Fund, Plaintiff has still plausibly alleged that he reasonably believed the directive was illegal.  Plaintiff's concerns about the decision to immediately cease acting as subadvisor were not contingent on the Stira Fund receiving notice of that decision.  Whether the directive rendered Alcentra NY's representations in the prospectus and statements to individual *investors* in the Fund misleading does not depend on whether anyone at the Stira Fund knew of Alcentra NY's intentions.  And Plaintiff's alleged belief that the directive violated fiduciary duties to the Fund is not contingent on notice either.  Plaintiff alleges he believed that Alcentra NY had fiduciary obligations to act in

the best interests of the Fund, advise the Fund, attend meetings, and provide updates, and those obligations would not cease simply because Alcentra NY informed the fund it would not fulfill them.[5]   Therefore, the Court determines that Plaintiff has alleged a reasonable belief regardless of the notice issue.

* * *

Plaintiff has plausibly alleged in his complaint that he reported Defendant's plan to withdraw as subadvisor to counsel at BNY Mellon and that he believed that this conduct would violate certain securities laws and regulations included in § 1514A.  Moreover, the allegations in the complaint are sufficient to conclude that this belief, regardless of whether it was true, could be deemed reasonable.  Therefore, Plaintiff has plausibly alleged that he engaged in "protected activity" under § 1514A.

### B.  Breach of Contract Claims

Plaintiff also asserts claims for breach of contract.  First, Plaintiff claims that Defendants had a contractual obligation not to terminate him for reporting misconduct and that they breached that obligation.  Second, Plaintiff claims that Defendants breached obligations in the Long-Term Incentive Plan and Cash Plan by improperly denying him incentive awards he was owed under the terms of those agreements.   In the alternative, Plaintiff argues that Defendants breached the implied covenant of good faith and fair dealing under the LTIP and Cash Plans.

The Court applies New York law to these claims because "the parties' briefs assume that New York substantive law governs the issues" and "such implied consent is, of course, sufficient

---

[5] Defendants claim that "any restriction on the timing of a potential resignation was purely contractual, not statutory or regulatory in nature" and that "it was not objectively reasonable for Mr. Yang to believe that a breach of a contractual duty is protected by SOX."  Dkt. No. 27-1 at 7, 17 n.10.  To the extent Defendants argue that their conduct cannot be both a breach of contract and a violation of the securities laws, they cite no authority for that proposition.

to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.,* 584 F.3d 33, 39

(2d Cir.2009)).  Under New York law, to survive a motion to dismiss "a complaint need only

allege (1) the existence of an agreement, (2) adequate performance of the contract by the

plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91

F.3d 337, 348 (2d Cir. 1996).  Defendants argue that Plaintiff has failed to allege that any

contracts were formed based on the offer letter, Code of Conduct, or the plans, and that Plaintiff

has therefore failed to state a claim for breach of contract.

### 1. Plaintiff cannot state a claim for breach under the offer letter and BNY Mellon Code of Conduct

Plaintiff claims that Defendants breached their contract for employment with Plaintiff by

allegedly terminating him because of his whistleblower complaint.  Plaintiff argues that, based

on the terms of his offer letter and the BNY Code of Conduct, Defendant was not permitted to

terminate him on these grounds.

Plaintiff's employment was at-will per the explicit terms of his offer letter.

"New York has a well-established at-will employment doctrine" which requires that "[a]bsent an

agreement establishing a fixed duration, an employment relationship is presumed to be a

hiring at will, terminable at any time by either party." *Albert v. Loksen,* 239 F.3d 256, 264 (2d

Cir. 2001) (citing *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333 (1987)).  Thus, if a plaintiff

is "an at-will employee," under New York law they will ordinarily have "no claim for breach of

contract based solely upon [their] termination." *In re Gen. Media, Inc.,* 368 B.R. 334, 341

(Bankr. S.D.N.Y. 2007).

However, "New York law carves out [] a few very narrow exceptions to the at-will

employment doctrine." *Brady v. Calyon Sec. (USA),* 406 F. Supp. 2d 307, 314 (S.D.N.Y. 2005).

Specifically, an employer's right to terminate an at will employee for any reason "remains

unimpaired" unless by "a constitutionally impermissible purpose, a statutory proscription, or" in some instances, as relevant here, an employer may be contractually prevented from terminating an employee by "an express limitation in the individual contract of employment." *Geldzahler v. New York Med. Coll.*, 663 F. Supp. 2d 379, 388 (S.D.N.Y. 2009).  To demonstrate an express limitation in the individual contract of employment on the employer's right to terminate, a plaintiff is "required to produce 'evidence that [he] was made aware of a written policy expressly limiting [the employer's] right of termination and that [he] detrimentally relied on that policy in accepting the employment.'" *Albert*, 239 F.3d at 264.

Plaintiff argues that, even though he was an at-will employee, Defendants were not permitted to fire him on these grounds because the reporting provision of BNY Mellon's Code of Conduct constitutes an "express limitation" on Defendants' right to termination.  *Id*.  In particular, Plaintiff points to the section of the Code that requires employees report any potential misconduct: "You are required to speak up immediately if you have a question or concern about what to do in a certain situation or if you believe someone is doing — or about to do — something that violates the law, company policy or our Code of Conduct."  Dkt. No. 26 ¶ 86 n.7. The Code also contains a "zero tolerance" policy for retaliation: "The company has zero tolerance for acts of retaliation . . . Zero means zero . . . No one has the authority to justify an act of retaliation . . . Any employee who engages in retaliation will be subject to disciplinary action, which may include dismissal." *Id.*  Plaintiff argues that, because of this language, Defendants were not permitted to terminate him for complying with the Code of Conduct and reporting potential misconduct.

While it is possible for an employer's code of conduct or similar document to create an express limitation on an employer's right to terminate at-will employees, such limitations should

not be read into those materials lightly.  The New York courts have made clear that "routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements." *Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 278 (S.D.N.Y. 2011), *aff'd*, 506 F. App'x 47 (2d Cir. 2012).  Courts will only find a limitation on an employer's right to terminate if an employment manual, code of conduct, or similar document makes *explicit assurances* that reporting will not result in termination.  *See Brady*, 406 F. Supp. 2d at 316 (holding that if the employment related-document "advises employees to report misconduct and assures protection from any retaliation," then "Under New York law, such language appears sufficient to create a limitation on the at-will nature of [the plaintiff's] employment."); *Mulder v. Donaldson, Lufkin & Jenrette*, 208 A.D.2d 301, 307, 623 N.Y.S.2d 560, 564 (1995) (holding that a "reporting requirement and reciprocal promise of protection in the manual impose[d] an *express limitation* on the right of [the employer] to terminate employees who make such reports," and thus the plaintiff "possesse[d] a cause of action for breach of contract.").

The language in the BNY Mellon Code of Conduct does not rise to the level of an express limitation on Defendants' right to terminate its at-will employees.  Courts determine that a reporting provision in a manual or code of conduct constitutes an express limitation under New York law when the provision expressly stated that the employee would not receive any kind of penalty or reprisal for reporting.  *See Criado v. ITT Corp.,* No. 92 CIV. 3552 (LJF), 1993 WL 322837, at *2 (S.D.N.Y. Aug. 16, 1993) ("[R]eport[s] . . . will be treated confidentially, and you will in no way be penalized for making such a report."); *Mulder*, 208 A.D.2d at 307, 623 N.Y.S.2d at 564 ("Anyone" who reports "will be protected against reprisals."); *Brady*, 406 F. Supp. 2d at 316 ("[Plaintiff's Employer] shall not discharge, demote, suspend, threaten, harass,

or in any manner discriminate against an employee in the terms and conditions of employment

based upon any lawful actions of such employee with response to good faith reporting.").  There

is no such assurance in the BNY Mellon Code of Conduct.

Plaintiff emphasizes that the Code provides that any employees who engage in retaliation

themselves will be subject to disciplinary action or dismissal, but that is not the same as stating

that employees who make reports will be protected from any kind of penalty or reprisal.  General

language encouraging reporting is insufficient.  The Second Circuit has made clear that

employment-related materials that merely "advis[e] employees to report" issues constitute "the

kind of generalized language that under New York law will not give rise to an implied

employment contract."  *Albert*, 239 F.3d at 264-65 (quotations omitted).  *See also Abdi v.*

*Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 229 (E.D.N.Y. 2006) ("An employer's

general statements reiterating its obligation to abide by existing law concerning discrimination

and equal employment do not serve as the basis for such a claim.").

Moreover, the Code contains other language that would dissuade an employee from

believing that Defendants were unable to discharge employees for making reports.  On the first

page, the Code the states that: "The Code of Conduct does not alter the terms and conditions of

your employment."  This type of language cuts strongly against a determination that the Code

creates contractual duties for Defendants.  "The New York Court of Appeals has held that an

express disclaimer of contractual rights in an employee manual bars an action

or breach of contract based on the terms of the manual."  *Mirabella v. Turner Broad. Sys., Inc.*,

No. 01 CIV. 5563 (BSJ), 2003 WL 21146657, at *2 (S.D.N.Y. May 19, 2003)).  *See also*

*Sharkey v. J.P. Morgan Chase & Co.*, No. 10 CIV 3824, 2011 WL 135026, at *10 (S.D.N.Y. Jan.

14, 2011) (declining to find that a code of conduct limited rights of at-will employer where "[t]he

disclaimer is unambiguous in its meaning and is conspicuously placed on the first page of the

Code.").  While Plaintiff argues that the Code does not expressly state that it "is not a contract of

employment," Dkt. No. 29 at 20, the language in the Code has the same effect – it "expressly and

specifically disavow[s] any intent on the [employer's] part to accept contractual limitations on its

rights as an at-will employer."  *Jain*, 827 F. Supp. 2d at 279 (citing *Baron v. Port Auth.,* 271 F.3d

81, 86 (2d Cir.2001)).  In conjunction with the fact that the Code does not expressly state that

employees will not receive any reprisals for reporting, under New York law the Code did not

create an express, written limitation on Defendants' rights to terminate their at-will employees.

Therefore, Plaintiff cannot state a claim for breach of contract based on the terms of his offer

letter and the BNY Mellon Code of Conduct as a result of Defendants' decision to terminate him.

## 2. Plaintiff has failed to state a claim for breach under either the Cash Award Plan or the Long-Term Incentive Plan

Though Plaintiff cannot state a claim for breach of contract for termination,

"[u]nder New York law, an employer's virtually unfettered power to terminate an at-

will employee does not negate its duty to abide by promises made prior to termination." *Parker*

*v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000).  Plaintiff argues that Defendant

was bound by promises to pay awards that were made in the Long-Term Incentive Plan and Cash

Award Plan.  As explained below, Plaintiff has failed to state a claim for either breach of

contract or breach of the implied covenant of good faith and fair dealing.

### a. Breach of Contract

"To form an enforceable contract under New York law, there must be an offer,

acceptance, and consideration, as well as a showing of a meeting of the minds, demonstrating the

parties mutual assent and mutual intent to be bound."  *In re Lyondell Chem. Co.,* 491 B.R. 41, 52

(Bankr. S.D.N.Y. 2013), *aff'd*, 505 B.R. 409 (S.D.N.Y. 2014) (cleaned up).  If the language of a

writing clearly indicates that there is no intent to form a contract, under New York law no

contract has been formed.  *See Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549

(2d Cir. 1998) (under New York law, in determining whether a writing is binding preliminary

agreement, courts are too look to "whether there has been an express reservation of the right not

to be bound in the absence of a [separate] writing."); *Arcadian Phosphates, Inc. v. Arcadian

Corp.,* 884 F.2d 69, 72 (2d Cir. 1989) (holding that "[t]he language of the [writing] . . . shows

that [the parties] did not intend to be bound.").   This is because "a party that wishes to be bound

can very easily protect itself by refusing to accept language that shows an intent not to be

bound." *Miller v. Tawil*, 165 F.Supp.2d 487, 492 (S.D.N.Y. 2001).  In a summary order, the

Second Circuit held that an incentive compensation plan which "state[d] explicitly that it 'does

not constitute an express or implied contract or a promise by [the employer] to make

any distributions under it," was not an enforceable contract under New York law.  *Kavitz v. Int'l

Bus. Machines, Corp.,* 458 F. App'x 18, 19-20 (2d Cir. 2012) (summary order).

The Second Circuit has also held that if an incentive compensation plan "expressly stated

that potential payments were within the sole, absolute, and exclusive discretion of" the employer,

the employee "could not state a claim for breach of contract under New York law." *Karmilowicz

v. Hartford Fin. Servs. Grp., Inc*., 494 F. App'x 153, 157 (2d Cir. 2012) (summary order);

*Bessemer Tr. Co. v. Branin*, 618 F.3d 76, 92 (2d Cir. 2011) (holding that the language in a bonus

plan to "reserve to the Salary Committee the decision to award or not to award a bonus, and in

what amount" was "dispositive" of the plaintiff's claim under New York law because it

"reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what

amount.").  Indeed, "[i]t is axiomatic that a promise to pay incentive compensation is

unenforceable if the written terms of the compensation plan make clear that the employer has

absolute discretion in deciding whether to pay the incentive." *O'Shea v. Bidcom, Inc.,* No. 01 CIV.3855 WHP, 2002 WL 1610942, at *3 (S.D.N.Y. July 22, 2002). Furthermore, "the rule in New York is that such absolute discretion must be retained unambiguously." *Lam v. Am. Exp. Co.*, 265 F. Supp. 2d 225, 237 (S.D.N.Y. 2003) (citing *Namad v. Salomon Inc.*, 74 N.Y.2d 751, 753, 543 N.E.2d 722, 723 (1989)). The "[d]iscretion to modify or cancel an incentive must . . . be explicit; it will not be implied if there exists no explicit contractual provisions assigning the employer absolute discretion to pay such compensation." *Id.*

Under these principles, Plaintiff has not stated a claim for breach under either the Cash Award Plan or the LTIP. The unambiguous language of the LTIP that "[n]either the adoption of the Plan nor any action of the Board of Directors . . . pursuant to the Plan shall be deemed to give any employee any right to be granted any Award under the Plan," Dkt. No. 27-1 at 20, demonstrates that Defendants "did not intend for the Plan to create an enforceable contract" and precludes the formation of a binding contract under New York law. *Kavitz.*, 458 F. App'x at 20. Moreover, Defendants also unambiguously retained the sole discretion in the LTIP to "grant Awards . . . under the Plan" and "make all other determinations and take all other action necessary or advisable for the implementation and administration of the plan." Dkt. No. 27-1 at 23. The Cash Plan likewise unambiguously reserves for Defendants total discretion. The plan states that "[a]lthough the Company anticipates that it will continue this Plan for an indefinite period of time, the [committee] has the right to terminate this Plan and any Award Letter at any time." Dkt. No. 27-8 at 7. And Defendants retained "complete discretion and authority to (i) make, amend and enforce all appropriate rules and regulations for the administration of this Plan or the Award Letter and (ii) interpret this Plan or the Award Letter and all such rules and regulations and otherwise resolve any and all questions  . . . as may arise in connection with this

Plan or the Award Letter." *Id.* Plaintiff therefore cannot bring a claim for breach of contract under either plan, because neither Plan imposed an obligation on Defendants to continue to provide Plaintiff Awards.

### b. Breach of implied covenant of good faith and fair dealing

Plaintiff maintains that, even if Defendants did not violate any express terms of the incentive compensation plans, Defendants violated the implied covenant of good faith and fair dealing. While "[a] party certainly cannot succeed on claims for both breach of an express contract term and breach of the implied covenant based on the same facts," if "there is a dispute over the meaning of the contract's express terms," then "there is no reason to bar a plaintiff from pursuing both types of claims in the alternative." *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 206 (2d Cir. 2018).

Under New York law, "implicit in every contract is a covenant of good faith and fair dealing . . . which encompasses any promises that a reasonable person would understand to be included." *Id.* at 205. The Second Circuit has held that "[u]nder New York law, if an employee is a part of a plan that gives a committee sole discretion to interpret the plan and determine whether the employee is entitled to benefits under the plan, a court can review such determinations to see whether they were made fraudulently, in bad faith, or arbitrarily." *Lucente v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 109, 114 (S.D.N.Y. 2003) (citing *Gehrhardt v. General Motors Corp.*, 581 F.2d 7 (2d Cir.1978); *Wyper v. Providence Washington Ins. Co.*, 533 F.2d 57 (2d Cir.1976); *Bradford v. New York Times*, 501 F.2d 51, 61 (2d Cir.1974)). More recently, in *Fishoff v. Coty Inc.*, the Second Circuit held that an incentive compensation plan that "contemplate[d] the exercise of discretion" by an employer also "include[d] a promise not to act arbitrarily or irrationally in exercising that discretion" under the implied covenant of good faith

21

and fair dealing.  *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995)).  Therefore, in some instances, an employer may nonetheless have a duty to act in good faith in exercising their contractual discretion.

However, "the implied covenant of good faith cannot create duties that negate explicit rights under a contract." *LJL 33rd St. Assocs., LLC v. Pitcairn Properties Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) (citing *D & L Holdings v. RCG Goldman Co.*, 287 A.D.2d 65, 73, 734 N.Y.S.2d 25 (N.Y.App.Div.2001)).  If the express terms of a contract provide for unrestricted discretion, then an implied limit on that discretion would be inconsistent with the express terms of the contract.  *Cf. Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983) ("[T]he parties may by express agreement limit or restrict the employee's right to discharge, but such a limitation will not be implied where, as here, the employer has an unrestricted right to discharge the employee.").  In *Fishoff*, the Court recognized that the implied duty of good faith and fair dealing might be "of no consequence" if the incentive compensation plan gave the employer "unrestricted discretionary right[s]," even though the Court ultimately determined that the plan in that case did not vest the employer with "unrestricted" discretion.  *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) (explaining that though the plan afforded the employer "considerable discretion in making determinations" about awards, the language of the plan placed certain limitations on the employer's ability to deny payments and alter the value of awards.).

The express language of the LTIP and Cash Plan are incompatible with an implied duty restricting Defendants' right to terminate awards.  Defendants unambiguously retained the absolute discretion to determine awards under the LTIP and Cash Award Plan, and therefore

Defendants' decision to terminate the awards does not implicate any implied duty of good faith and fair dealing.  *Accord Econn v. Barclays Bank PLC*, No. 07 CIV. 2440 BSJ, 2010 WL 9008868, at *6 (S.D.N.Y. June 10, 2010); *Sathe v. Bank of N.*Y., No. 89 CIV. 6810 LBS, 1990 WL 58862, at *4 (S.D.N.Y. May 2, 1990).  Additionally, as discussed above, the LTIP in particular contains express language disclaiming any intent on the part of Defendants' to be bound.  Because the breach of the "implied duty of good faith . . . is merely a breach of the underlying contract," *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992), there can be no breach of the implied covenant if there is no contract at all.

### C.  Quantum meruit and unjust enrichment

Defendants argue that Plaintiff's quasi-contract claims must be dismissed because they are duplicative of his breach of contract claims.  "Under New York law, quasi-contractual . . . relief is unavailable where . . . an express contract covers the subject matter." *Karmilowicz*, 494 F. App'x at 157 (2d Cir. 2012) (collecting cases).  However, as discussed above, Plaintiff has not plausibly alleged that there is an express contract governing these claims, and therefore Plaintiffs' quasi-contract theories are not barred on this ground.[6]  *See Adams v. Labaton, Sucharow & Rudoff LLP*, No. 07 CIV. 7017 (DAB), 2009 WL 928143, at *7 (S.D.N.Y. Mar. 20, 2009) ("Plaintiff's remaining claims of . . . unjust enrichment[] and quantum meruit cannot be maintained alongside a properly asserted breach of contract claim as a matter of law" and "[a]s such, these claims may only proceed should the Court find that no valid contract exists.").

### III.   CONCLUSION

---

[6] The Court also rejects at this stage Defendants' argument that Plaintiff's quasi-contract claims are "derivative of his SOX claim." Dkt. No. 31 at 10.  There is no legal authority provided to support the contention that Defendants cannot be subject to these two forms of liability for the same conduct.

For the reasons stated above, Defendants' motion is GRANTED IN PART and DENIED IN PART.  Plaintiff's claims for breach of contract are dismissed with prejudice.  Plaintiff has stated a claim for retaliation in violation of § 1514A and has adequately pled quasi-contract claims as well.  Defendants' motion to dismiss the original complaint is administratively denied. Defendants' request for oral argument on the motion is DENIED.

This resolves Dkt. Nos. 19, 20, 27 and 28.  The parties are to proceed with discovery in accordance with the Case Management Plan and subsequent orders from Judge Wang.  Dkt. No. 45, 51.

SO ORDERED.

Dated: March 31, 2021
     New York, New York

_____
ALISON J. NATHAN
United States District Judge